ORIGINAL

ANDRE S. WOOTEN       #3887
ATTORNEY AT LAW
1188 BISHOP STREET
SUITE 1909
HONOLULU, HI 96813
TEL: 808-545-4165

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

ATTORNEY FOR PLAINTIFF

NOV 2 7 2006

IN THE UNITED STATES DISTRICT COURT ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT SHEREZ; | ) | Civil No. 04-00390 JMS-KSC |
| | ) | |
| Plaintiff, | ) | PLAINTIFF'S 2nd PRETRIAL STATEMENT; |
| | ) | CERTIFICATE OF SERVICE |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII | ) | |
| DEPARTMENT OF EDUCATION; | ) | Conference: Dec. 7, 2006 |
| PATRICIA HAMAMOTO, | ) | Time: 9:00 Am |
| Superintendent of Hawaii | ) | Judge: Hon. Kevin Chang |
| Schools; MEREDITH MAEDA, | ) | |
| Principal of Castle High | ) | Trial: March 28, 2007 |
| School; SARA GRONNER or | ) | Judge: Hon. Kevin Chang |
| GRONNA, Vice Principal | ) | |
| of Castle High School; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S 2nd PRETRIAL STATEMENT

The Plaintiff ROBERT SHEREZ, through his undersigned

attorney Andre S. Wooten, hereby files his Pretrial Statement

pursuant to Local Rule 16.6.

**(a) Party.**

This Pretrial Statement is filed on behalf of the Plaintiff.

**(b) Jurisdiction and Venue.**

In his Complaint, the Plaintiff claims the following grounds

1

for federal jurisdiction:

13.   The Plaintiff adheres and states as follows the category jurisdiction. The jurisdiction of this court is afforded this case as matters arising Under 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, 42 U.S.C. 1985, 42 U.S.C. 1986, and 42 U.S.C. 2000e, arise under the United States District Court under original jurisdiction.  In addition, the amount in controversy is substantially in excess of $75,000.00 pursuant to 28 U.S.C. 1331 and 28 U.S.C. Section 1332(a)(1).

14.   Federal Constitution and Civil Rights law violations confer original jurisdiction upon this court pursuant to Federal Civil Rights Law pursuant to U.S.C. Section 1331 and 28 U.S.C. 1343(3) and Under pendant jurisdiction with respect to the causes of action arising under state common law and statutes pursuant to Title 28 U.S.C. and tort. The jurisdiction of the court is invoked to secure the protection of Civil Rights and to redress deprivation of rights, privileges, and immunities secured by a) 14th Amendment to the Constitution of the United States, Section 1(b) the Commerce Clause, article 1, section 8, clause 3 of the Constitution of the United States; c) title 2 of the Civil Rights Act of 1964, 78 STAT 243, 42 U.S.C. Section 2000(a) at seq. Providing for injunctive relief against discrimination and places of public accommodation; and d) 42 U.S.C. 1981, providing for the equal rights of citizens and all persons within the jurisdiction

2

of the United States.

**(c) Substance of Action.**

The Plaintiff's causes of action against the Defendants are the following:

1.  Violation of 14th Amendment, Title IX Educational Amendments of 1972, Section 901(a), 20 U.S.C.A. Section 161(a)

2.  Violation of Title IX, Deliberate Indifference

3.  Intentional Infliction of Emotional Distress

4.  Violation of 42 U.S.C. Section 1981

5.  Violation of 42 U.S.C. Section 1985

6.  Violation of 42 U.S.C. Section 1986

7.  Violation of 42 U.S.C. Section 1983

8.  Violation of State of Hawaii Fair Employment Act

9.  Violation of Title VII, The 1964 U.S.A. Fair Employment Act, 42 U.S.C. Section 2000e

**(d) Undisputed Facts.**

1.  Defendant Department of Education is an executive department of the State of Hawaii.

2.  During a portion of the relevant time described in the First Amended Complaint, Sarah Gronna served as a vice principal at Castle High School.

3.  During the relevant time described in the First Amended Complaint, Defendant Meredith Maeda was the principal

3

of Castle High School.

4.    During the relevant time described in the First Amended
Complaint, the Plaintiff served as a part-time tutor in
the Home Hospital Instructional program.

**(e) Disputed Factual Issues.**

1.    The parties dispute liability and damages.

**(f) Relief Prayed.**

The Plaintiff prays for monetary damages and injunctive
relief.

**(g) Points of Law.**

Clearly, the Individual Defendants, as distinct from
Defendant State of Hawaii Department of Education and the
individual Defendants in their official capacity, can be held
individually liable under Federal and State law is for common law
tort violations in Federal Court, and Federal Civil Rights
violation over which the Federal law confers original
jurisdiction in Federal court and comity jurisdiction of State
tort claims arising out of the same facts.

As the Ninth Circuit Court of appeals ruled a decade ago in
OFFICE OF HAWAI'IAN AFFAIRS v. DEPARTMENT OF EDUCATION, (Hawaii
1996) *951 F. Supp. 1484*

> Although the Eleventh Amendment prevents Plaintiffs
> from directly suing states and state agencies, the Eleventh
> Amendment does not bar suits against state officials for
> prospective injunctive relief.   Under this exception to the
> Eleventh Amendment recognized by the Supreme Court, a
> plaintiff may sue a state official to challenge the

4

constitutionality of a state official's action by seeking prospective injunctive relief. *Pennhurst* West Page 1493 *State School & Hosp. v. Halderman,* 465 U.S. at 103-05, 104 S.Ct. at 910 (citing *Ex Parte Young,* <u>209 U.S. 123</u>, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).   This exception extends to suits against state officials for violations of federal statutory law. *Exxon Corp. v. Fischer,* 817 F.2d <u>1429 (9th Cir. 1987) (discussing supremacy clause).</u>

<u>If a plaintiff asks a federal court to enjoin an official's future unlawful conduct, the Eleventh Amendment presents no bar because actions by a state official in violation of the constitution or federal law cannot be authorized by a state. *Id.* at 102-03, 104 S.Ct. at 908-910. As the Supreme Court stated in *Pennhurst,* "an official who acts unconstitutionally is `stripped of his official or representative character.'" *Id.* at 102, 104 S.Ct. at 910 (quoting *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. at 454). Emphasis added.</u>

In addition, the State of Hawaii Anti-employment discrimination act clearly makes individuals liable on it's face, the State of Hawaii Supreme Court has also so ruled.   <u>IDDINGS v. MEE-LEE, 82 Haw. 1 (1996)</u>

**The Individual Defendants are liable to Plaintiff personally for violating Plaintiff's rights under Title VII, and Title IX under color of law in violation of 42 U.S.C. 1983. Under Hawaii State law those Defendants are also personally liable for their  discriminatory as well as retaliatory conduct. As the Hawai court ruled in <u>SCHEFKE v. RELIABLE COLLECTION AGENCY, LTD., 96 Haw. 408 (2001)</u>**

HRS § 378-2(2) and (3) provide in pertinent part that it is "an unlawful discriminatory practice: (2) [f]or any employer . . . to discharge, expel, or otherwise discriminate against any individual because the

individual . . . has filed a complaint . . . in any
proceeding respecting the discriminatory practices
prohibited under this part" <u>or "</u>

<u>(3) [f]or any person whether an employer, employee, or</u>
<u>not, to aid, abet, incite, compel, or coerce the doing of</u>
<u>any [such] practices . . . or to attempt to do so[.]"</u>
(Emphases added.) The terms "employer" and "person" are
defined in HRS § 378-1 (1993) as follows:

Definitions. As used herein:

. . . .

"Employer" means any person, including the State or
any of its political subdivisions and any agent of such
person, having one or more employees, but shall not
include the United States.

. . . .

"Person" means one or more individuals, and includes,
but is not limited to, partnerships, associations, or
corporations, legal representatives, trustees, trustees
in bankruptcy, receivers, or the State or any of its
political subdivisions.


Defendants argue that Fred cannot be held personally
liable because (1) he engaged only in a "brief
conversation concerning the bonus"; (2) the decision to
give a bonus or not was ultimately left to Jonathan; and
(3) he did not participate in managing Pacific or
Reliable or in any decisions concerning Plaintiff.

<u>HRS § 378-2(3), however, provides that "any person</u>
<u>whether an employer, employee, or not" can be held liable</u>
<u>for "aid[ing], abet[ting], incit[ing], compel[ling], or</u>
<u>coerc[ing] the doing of any discriminatory practices</u>
<u>forbidden by this part."</u>[fn65] (Emphases added.) Thus,
under the broad language of HRS § 378-2(3), Fred can be
liable even if he was "offering advice, not making any
decision."   Taking as true that Fred told Jonathan
Plaintiff should not receive a bonus, Fred could be said
to have at least incited the doing of the discriminatory
practice forbidden by HRS § 378-2(2), in violation of HRS
§ 378-2(3).

6

"[D]isregarding conflicting evidence," Furukawa, 85
Hawai`i at 11, 936 P.2d at 647, and giving Plaintiff's
evidence "all the value to which it is legally entitled,
and indulging every legitimate inference which may be
drawn from the evidence in [Plaintiff's] favor," id. at
12, 936 P.2d at 648 (internal quotation marks and
citations omitted), it cannot be said that "there is no
evidence to support a jury verdict in [Plaintiff's]
favor," id. (internal quotation marks, citations, and
brackets omitted), on the issue of Jonathan's and Fred's
liability on the retaliation claim. Thus, the court erred
in granting these directed
verdicts.[fn66]    SCHEFKE v. RELIABLE COLLECTION
AGENCY, LTD., 96 Haw. 408 (2001)


3.   **THE DEFENDANTS DESTROYED EVIDENCE AND SHOULD
         BE SANCTIONED FOR IT**


Spoliation is defined as the destruction of evidence, or the

significant and meaningful alteration of a document or

instrument. Matsuura v. E.I. Dupont, 102 Haw. 149 (2003); Brewer

v. Dowling, 862 S.,W. 2d 156, 158 N2 (Tex. App. - Ft. Worth 1993,

writ den d). Hawaii as well as Texas law currently allows the

jury to receive an instruction when evidence is raised suggesting

that evidence relevant to a claim has been lost or destroyed.

The jury may be instructed that a presumption exists that the

evidence would be unfavorable to the spoliating party. This

presumption has long been recognized and its use has been crucial

to the outcome of cases. See Trevino v. Ortega, 969 S.W. 2d 950

(Tex. 1998).

In this case, the Defendant State of Hawaii Department of

7

Education has refused to give_Plaintiff relevant requested documents concerning it's hiring policies and practices. Including records of the teachers hired for the 3 or 4 types of part-time work Plaintiff had performed for Defendant for years prior to filing this complaint of gender discrimination and becoming the subject of system wide retaliation.    The documents requested are normal "comparison" data needed to compare the qualifications and gender of the teachers hired by Defendants instead of Plaintiff, which tend to prove gender or racial discrimination.

Under the Title VII, The 1964 Anti-Discrimination in Employment Act, documents pertaining to the promotion must be retained for one year after the job decision is made, and until conclusion of the case if a complaint is filed.  See 29 C.F.R. Sec. 1627.3(b)(1).

When documents have been destroyed by the employer in discrimination cases, the AJ has the power to make an adverse inference. See 29 C.F.R. Section 1614.109 (b)(1) and( f)(3). See King v. U.S. Postal Service, EEOC Request No. 05940441 (February 2, 1995) (adverse inference by AJ when responding agency did not show good cause for not producing documents pertaining to the rating process of applicants); Wasser v, Dpt. of Labor, EEOC Request No. 05940058 (Nov. 2, 1995) (AJ found adverse inference when employer agency failed to produce documents); Lebron v. U.S.

Postal Service, EEOC Appeal No. 01943052 (Jan. 19, 1996) (AJ
found adverse inference when respondent failed to produce
information on comparative employees being provided supervisory
assignments).

In Samson v. Department of Justice, EEOC Req. No. 05960435
(August 13, 1998), the Commission ruled that an administrative
judge properly drew an adverse inference from the agency's
failure to show good cause for not preserving documents relevant
to the employees complaint.  The EEOC Notice of Complaint form
sent to the Defendant in August 2003 specified_the Defendant was
to preserve all relevant documents.

Similar to the instant case, the employee requested
documents concerning a promotion selection.  The responding
agency "failed to provide any documents normally associated with
the selection process, such as application documents from the
ranking panel, questions after noted by the screening panel, or
other documents related to the selection process or comparative
notes from the candidates from the selecting official".  Based
upon the responding agency's failure to produce documents, the
administrative judge determined that the agency's investigative
file was severely lacking documents appearing to be crucial to a
fair presentation of the case.  The agency failed to show good
cause for a failure to maintain information relevant to the
complaint and_therefore an adverse inference was proper.  The AJ

9

found in favor of the employee including an award of full relief.

> Nor has Plaintiff alleged that the procedures were
> constitutionally inadequate, or that they were not
> properly followed. See, e.g., Boettcher v. Secretary of
> Health and Human Servs., 759 F.2d 719, 722 (9th Cir.
> 1985) (holding that the plaintiff's challenge to the
> Secretary of Labor's decision to hold a de novo hearing
> on all issues where the plaintiff sought to appeal only
> as to determination of the date of the onset of his
> disability stated a colorable due process claim).

In this case, however, Defendant is required to make and create records of it's hiring and assignment of Home Hospital Tutor teachers and other part-time employees, as well as new Certified Special Education teachers that were hired instead of Plaintiff, a certified Special Education teacher, who has gone unemployed all year, while others who have not even completed the program were hired while still in school.

## 4. DEFENDANT'S CONDUCT VIOLATES FUNDAMENTAL FAIRNESS AND PLAINTIFF'S CONSTITUTIONAL RIGHTS.

The fact that the will not produce these documents is more than suspicious. The destruction of these documents is evidence that the teacher jobs were allocated on a discriminatory basis, which harmed the while male Plaintiff who did not get any of the special treatment relatives and friends of Sara Gronna and the Defendants got, which cost him money due to inferior hours of work assigned Plaintiff.

However, the destruction of evidence in violation of 29

C.F.R. Sec. 1627.3(b)(1), is also evidence of

unconstitutional  violations of the specific statutes argued

in support of Plaintiff in this case.

        1.    Violation of Title IX.
        2.    Violation of Title IX Deliberate Indifference.
        3.    Intentional Infliction of Emotional Distress.
        4.    Violation of 42 U.S.C. 1981.
        5.    Violation of 42 U.S.C. 1985.
        6.    Violation of 42 U.S.C. 1986.
        7.    Violation of 42 U.S.C. 1983.
        9.    Violation of State of Hawaii Fair Employment Act.
        10.   Violation of Title VII, 42 U.S.C. 2000e.


    In TRITCHLER v. COUNTY OF LAKE, 358 F.3d 1150 (9th Cir.

2004) the Ninth Circuit Court of Appeals re-iterated as

recently as February 18, 2004, that all State's  have waived

and are subject to the jurisdiction of the Federal Courts

under Title VII, as well as Title VI, 42 U.S.C. 2000(e) and

(d), as well as Title IX.

  **5.   State of Hawaii Employees are not immune from suit for
        discriminatory  actions they commit on the job.**

    **Hawai`i Revised Statutes (HRS) Chapter 662, the State
    Tort Liability Act,**

      sets out the parameters under which the State of
      Hawai`i waives its sovereign immunity from suit. HRS §§
      662-2 (1993) provides that "[t]he State hereby waives
      its immunity for liability for the torts of its
      employees and shall be liable in the same manner and to
      the same extent as a private individual under like
      circumstances, but shall not be liable for interest

11

prior to judgment or for punitive damages." HRS §§ 662-
15(1) (1993) provides that there is an exception to
this waiver for

[a]ny claim based upon an act or omission of an
employee of the State, exercising due care, in the
execution of a statute or regulation, whether or not
such statute or regulation is valid, or based upon the
exercise or performance or the failure to exercise or
perform a discretionary function or duty on the part of
a state officer or employee, whether or not the
discretion involved has been abused[.]   HRS §§ 662-2.


Intentional illegal discriminatory actions have never been
exempt from redress under the Hawaii State Tort Liability Act.
**And malfeasance in conducting official investigations by a State**
**Agency are indeed actionable under State law.**   TSEU, v. JEYTE
NO. 20489;  APPEAL FROM FIRST CIRCUIT COURT (CIV. NO. 94-1553)
JUNE 30, 1998.    Thus the employee defendants are not immune
from suit for State of Federal civil rights violations or
intentional torts.

**The Individual Defendants are liable to Plaintiff**
**personally for violating Plaintiff's rights under Title VII, and**
**Title IX under color of law in violation of 42 U.S.C. 1983.**
**Under Hawaii State law those Defendants are also personally**
**liable for their  discriminatory as well as retaliatory conduct.**
**As the Hawai court ruled in SCHEFKE v. RELIABLE COLLECTION**
**AGENCY, LTD., 96 Haw. 408 (2001)**

HRS § 378-2(2) and (3) provide in pertinent part that
it is "an unlawful discriminatory practice: (2) [f]or any

12

employer . . . to discharge, expel, or otherwise
discriminate against any individual because the
individual . . . has filed a complaint . . . in any

proceeding respecting the discriminatory practices
prohibited under this part" <u>or "</u>

<u>(3) [f]or any person whether an employer, employee, or</u>
<u>not, to aid, abet, incite, compel, or coerce the doing of</u>
<u>any [such] practices . . . or to attempt to do so[.]"</u>
(Emphases added.) The terms "employer" and "person" are
defined in HRS § 378-1 (1993) as follows:

Definitions. As used herein:

. . . .

"Employer" means any person, including the State or
any of its political subdivisions and any agent of such
person, having one or more employees, but shall not
include the United States.

. . . .

"Person" means one or more individuals, and includes,
but is not limited to, partnerships, associations, or
corporations, legal representatives, trustees, trustees
in bankruptcy, receivers, or the State or any of its
political subdivisions.

Defendants argue that Fred cannot be held personally
liable because (1) he engaged only in a "brief
conversation concerning the bonus"; (2) the decision to
give a bonus or not was ultimately left to Jonathan; and
(3) he did not participate in managing Pacific or
Reliable or in any decisions concerning Plaintiff.
<u>HRS § 378-2(3), however, provides that "any person</u>
<u>whether an employer, employee, or not" can be held liable</u>
<u>for "aid[ing], abet[ting], incit[ing], compel[ling], or</u>
<u>coerc[ing] the doing of any discriminatory practices</u>
<u>forbidden by this part."</u>[fn65] (Emphases added.) Thus,
under the broad language of HRS § 378-2(3), Fred can be
liable even if he was "offering advice, not making any
decision."   Taking as true that Fred told Jonathan
Plaintiff should not receive a bonus, Fred could be said
to have at least incited the doing of the discriminatory
practice forbidden by HRS § 378-2(2), in violation of HRS
§ 378-2(3).

13

"[D]isregarding conflicting evidence," Furukawa, 85
Hawai`i at 11, 936 P.2d at 647, and giving Plaintiff's
evidence "all the value to which it is legally entitled,
and indulging every legitimate inference which may be
drawn from the evidence in [Plaintiff's] favor," id. at
12, 936 P.2d at 648 (internal quotation marks and
citations omitted), it cannot be said that "there is no
evidence to support a jury verdict in [Plaintiff's]
favor," id. (internal quotation marks, citations, and
brackets omitted), on the issue of Jonathan's and Fred's
liability on the retaliation claim. Thus, the court erred
in granting these directed verdicts.[fn66]   <u>SCHEFKE
v. RELIABLE COLLECTION AGENCY, LTD.</u>, 96 Haw. 408 (2001)


    Hence, the District Court is correct in exercising it's
supplemental jurisdiction in this case and not creating more
litigations expenses for both sides by splitting the case in two.

### *42 U.S.C. §§ 1981.*   Equal rights under the law

(a) Statement of equal rights.

All persons within the jurisdiction of the United
States shall have the same right in every State and
Territory to make and enforce contracts, to sue, be
parties, give evidence, and to the full and equal
benefit of all laws and proceedings for the security of
persons and property as is enjoyed by white citizens,
and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every
kind, and to no other.

(b) "Make and enforce contracts" defined For purposes
of this section, the term "make and enforce contracts"
includes the making, performance, modification, and
termination of contracts, and the enjoyment of all
benefits, privileges, terms, and conditions of the
contractual relationship.

(c) Protection against impairment The rights protected
by this section are protected against impairment by
nongovernmental discrimination and impairment under
color of State law. (R.S. Sec. 1977; Pub.L. 102-166,
title I, Sec. 101, Nov. 21, 1991, 105 Stat. 1071.)
CODIFICATION R.S. Sec. 1977 derived from act May 31,

1870, ch. 114, Sec. 16, 16 Stat. 144. Section was formerly classified to section 41 of Title 8, Aliens and Nationality. AMENDMENTS 1991 - Pub.L. 102-166 designated existing provisions as subsec. (a) and added subsecs. (b) and (c).

What we  have in this case, is a situation similar to that which the Supreme Court  in McDonnell Douglas Corp. vs. Green, supra @804 stated was "Especially relevant to proving `pre-textual' excuse for discriminatory action is  "a showing that white employees," or any other group of people other than African American] (Or male) employees, were regularly given advantages in the Home Hospital Tutor selection process which violate the D.O.E.'s own rules which require that level 3 "certified teachers be given first consideration for the teaching jobs.  And the jobs are to be rotated on a fair and non-gender biased basis.   Unless perhaps there is a particular specified need in a particular case.    But here the restriction against males tutoring female students is being applied on a blanket basis, even though the sessions are to be accompanied by an adult.

The refusal of the D.O.E. to disclose event their own rules as well as their actual hiring records should lead to an adverse inference of their content at trial, should the DOE continue to share it's rules and hiring records with the Plaintiff.

The Ninth Circuit Court of Appeals has ruled in Bonilla v.

15

Oakland Scavenger Co., 697 F 2d 1297 (1982) that "Nepotistic concerns could not supersede mandate of employment discrimination laws...The company's practice of limiting share ownership to persons who were of Italian ancestry and were either members of family or close friends of current shareholders and practice of assigning better jobs with higher pay and more guaranteed hours to shareholder employees was prim facie violation of Title VII, Civil Rights Act of 1974, $ 701 et seq. as

The United States Supreme Court ruled a decade ago in Griggs vs. Duke Power Co. 401 U.S. 424 **"If an employment Practice operates to exclude Negroes (or women) cannot be shown to be related to job performance, the practice is prohibited."** Well ignoring the level 3 hiring  rules and Plaintiff's advanced degree and post graduate work, are such blatant intentionally emotionally distressing, public, illegal discriminatory prohibited acts.

The unfair treatment established on the record here was also in violation of section 378 of the Hawaii Revised Statutes and the Defendant's own Equal Opportunity Policies.

### 6.  PUNITIVE DAMAGES

The U.S. Supreme Court ruled in Kolstad v. American Dental Association ruled that an employer's conduct need not be "egregious" to satisfy the law's requirement for punitive

16

damages.    Once a worker has successfully made a case that a company intentionally discriminated, the worker can win punitive damages if it can be shown that the employer acted "with malice or with reckless indifference," focusing on the state of mind of the supervisor.    KOLSTAD v. AMERICAN DENTAL ASSN., 527 U.S. 526 (1999)    In this case in systematic discrimination against teachers    was alleged and can be proven.    Given the State of Hawaii commandment of non-discrimination in Article X Section 1, Title VII and Title IX, the defendants cannot say they were unaware of their obligation to craft non-discriminatory D.O. E. employment standards.

The Defendants should know that maintaining a discriminatory hiring policy violated Article X, Section 1 of the State Constitution and Title IX for Federal programs, as well as 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, 42 U.S.C. 1985 and 42 U.S.C. 1986.

The Defendants have to set some standards.    And they must be made to disclose what they are.    They are not allowed to disregard their own guidelines, and just deny a person their right to fair non-discriminatory employment assignments because they disagree with that policy.    Kinoshita, 724 P.2d at 117 (citation omitted)    Parnar, 65 Haw. at 380, 652 P. 2d at 631. Hoffman-LaRoche v. Campbell 512 So 2d 725 (Ala. 1987).

The Plaintiff tenders this Counter Motion for Summary

Judgment pursuant to Rules 50, 56, and 60 of the Federal Rules of Civil Procedure, which is based upon the Declaration of Plaintiff and Exhibits submitted in opposition to Defendant's Motion For Summary Judgment.

The Defendant DOE's position will not stand up under scrutiny of the actual relevant tutor assignment records and facts, as compared with the DOE's own rules and regulations requiring rotating assignments of the most qualified level 3 tutors first and then, the level 2 and level 1 tutors, who have less education than the level 3 tutor, who must have and advanced graduate school degree.    And level one tutors do not even have to have a high school diploma in Hawaii, but it is clear than the level one tutor does not compare in quality of training and advanced education with a level 3 tutor.        It's evidence of these types of preferential hiring rule violation discrepancies, which the Defendant desires to keep from the public eye by refusing to comply with Plaintiff's reasonable discovery request for relevant data.

As the Supreme Court stated in <u>Griggs vs. Duke Power Co.</u> 401 US supra @ 426, 91 S Ct at 851, 28 L Ed 2d @ 161 and quoted in <u>Rowe vs. General Motors Corp.</u> 457 F 2d 345 @ 355:

> "It is clearly not enough under Title VII that the procedures utilized by employers are fair in form. These procedures must in fact be fair in operation. Likewise, the intent of employers who utilize such discriminatory procedures is not controlling since

> "Congress directed the thrust of the Act to the consequences of employment practices, not simply the motivation." <u>Griggs vs. Duke Power Co.</u> 401 US @ 432.
>
> "It is therefore clear that employment practices which operate to discriminate against people because of their race, color, religion, sex or national origin, violate Title VII, even though the practices are fair on their face and even though the employer had no subjective intention to discriminate."

This type of intentional harmful employment activity has long been recognized as actionable, but also of the type of proscribed activity for which punitive damages and personal liability are also imposed.

> In this case, dealing with the scope and requirements of the statutory **"wilful[[fn1]] and wanton misconduct" exception** to the co-employee immunity provisions of Haw.'s workers' compensation scheme, Haw. Revised Statutes (HRS) chapter 386, plaintiff-appellant Barbara Iddings appeals from the Page 4 First Circuit Court's grant of summary judgment in favor of defendant-appellee Dennis Mee-Lee, M.D. Iddings, a nurse in the Intensive Care Module of Castle Medical Center's (CMC) Human Services Unit, suffered injuries while she assisted other CMC staff members in subduing a violent patient. Iddings asserted that Dr. Mee-Lee, who was in charge of the Human Services Unit, engaged in "wilful and wanton misconduct" by allegedly allowing the Intensive Care Module to become overcrowded with patients and furniture, despite being aware of a risk of injury stemming from the alleged overcrowding.   IDDINGS v. MEE-LEE, 82 Haw. 1 (1996)
>
> Compensatory and punitive damages are generally available in employment discrimination cases, as remedies from a court or an agency, or both. Larson, 6 *Employment Discrimination* §§ 114.08 (1996). Furukawa properly filed his discrimination complaint with the commission within 180 days, pursuant to HRS §§ 368-11(c). As provided for under HRS §§ 368-12 (1993) (b) Section 386-5 notwithstanding, a workers' compensation claim or remedy does not bar relief on complaints filed with the commission. FURUKAWA v. HONOLULU ZOOLOGICAL SOCIETY, 85 Haw. 7 (1997)

The Furukawa v. Honolulu Zoological Society, supra case is the general rule on employment discrimination cases such as this in the state of Hawaii, and it holds that supervisors can be held responsible for wrongful actions which injure subordinate employees.

The Defendants blithely claim they did not discriminate against Plaintiff, while steadfastly refusing to turn over the employment records that would prove or disprove those assertions with the evidence of just exactly what the DOE actually did and whom they hired.    They even refuse to turn over their Home Hospital Tutor hiring procedures, rules and policy.    There by refusing to give facts and evidence to explain their continuing discrimination against Plaintiff.    The Defendants refusal to produce such normal employment documents is a factor for the jury to consider in evaluating the applicability of punitive damages, as well as discriminatory intent, and disparate impact.

If employer chooses to issue a rule... [it]..cannot abide by it selectively Kinoshita 724 P 2d 117.    Plaintiff is required by Federal Law to articulate and implement non-discriminatory employment practices.    We strongly assert that the employment actions of the DOE have contradicted their rules, regulations and policies in recent years.    And that is why they

20

do not want to share these relevant records with the Plaintiff.
That is both illogical and unfair.

If an employer chooses to issue a policy statement, in
a manual or otherwise, and by its language or by the employer's
actions, encourages reliance thereon, the employer cannot be free
to only selectively abide by it.  Having announced a policy, the
employer [68 Haw. 596] may not treat it as illusory.  Kinoshita
v. Canadian Pacific Airlines, Ltd.,  724 P.2d 110, 68 Haw. 594,
page 724 P.2d 116 (Hawai'i 1986) Thompson v. St. Regis Paper Co.,
102 Wash. 2d 219, 228, 685 P.2d 1081, 1087 (1984)  Toussaint v.
Blue Cross & Blue Shield, 408 Mich. 579, 613, 292 N.W.2d 880, 892
(1980); Leikvold v. Valley View Community Hospital, 141 Ariz.
544, 688 P.2d 170 (1984),

> Claims against state officials in their individual
> capacity are not barred by either §§ 1983 or by the
> Eleventh Amendment. See 1B, Martin A. Schwartz and John
> E. Kirklin, Section 1983 Litigation: Claims & Defenses
> (3d ed. 1997); see also Emma C., 985 F. Supp. at 947.
> However, such claims may be subject to the defense of
> qualified immunity. Public officials who carry out
> executive or administrative functions are protected
> from personal monetary liability so long as their
> actions do not violate "clearly established [federal]
> statutory or constitutional rights of which a
> reasonable person would have known." Harlow v.
> Fitzgerald, 457 U.S. 800, 818 (1982). This standard
> turns on the "objective legal reasonableness of the
> official's conduct."

Here, since Defendant's knew they should follow the mandate
of the Rules and Regulations and policies for non-discriminatory
and gender bias free hiring of experienced and credentialed Home

21

Hospital, part-time Adult Education, Special Education and substitute teachers, that it refuses to produce.

For dismissal, a claim must be absolutely without merit to be granted. See Rosa v. CWJ Contractors, 4 Haw. App. 210 (1983). In reviewing a motion to dismiss under Rule 12(b)(6) the court will deemed all allegations contained in the complaint as true. See Au v. Au, 63 Haw. 210 (1981) Midkiff v. Castle & Cooke, Inc., 45 Haw. 409 (1962). The court should review the complaint in the light most favorable to the plaintiff in order to determine whether the allegations contained could warrant relief under any alternative theory. Touchette v. Ganal, 82 Haw.293 (1996). Paragraphs 12 to 31 in Plaintiff's Declaration and the documents sought in Exhibits 1, 2, 3, and 4 attached to Plaintiff's concise Counter-Statement and Counter-Motion For Summary Judgment, establish a firm basis of evidence upon which Plaintiff could prevail in his case at trial.

**(h) Previous Motions.**

The Defendants have filed motions for judgment on the pleadings and for summary judgment, which have been substantially denied.

**(i) Witnesses.**

Robert Sherez
c/o André S. Wooten
1188 Bishop St., Suite 1909
Honolulu, Hawaii   96813

Ira Ilson

c/o Castle High School
45-386 Kaneohe Bay Drive
Kaneohe, HI 96744
Ph. 233-5600

Richard Furmark
c/o Castle High School
45-386 Kaneohe Bay Drive
Kaneohe, HI 96744
Ph. 233-5600


Virginia Soares
c/o Windward District Office
46-169 Kamehameha Highway
Kaneohe, HI 96744
Ph. 233-5700

Marty Mattison
c/o Windward District Office
46-169 Kamehameha Highway
Kaneohe, HI 96744
Ph. 233-5700

Meredith Maeda
c/o Castle High School
45-386 Kaneohe Bay Drive
Kaneohe, HI 96744
Ph. 233-5600

Sarah Gronna
c/o Department of the Attorney General
Employment Law Division
235 South Beretania Street, 15th Floor
Honolulu, HI 96813
Ph. 587-2900

Pamela Chan-Gallagher
1981 Puoloaina Drive
Honolulu, HI 96813
Ph. 371-2301

Keola Anderson
526 N. School Street
Honolulu, HI 96817
Ph. 534-7029


Ralphy Kesol

23

Ph. 599-1837

ChihCha Yim
750 Amaha St., #1205
Honolulu, HI 96814
Ph. 942-3047

Susie H. Kang
Ph. 282-9997

Haruko Okamura
Ph. 589-2806

Jae E. Kang
Ph. 285-3440/942-8478

Ronald Aloliho
1022 McCandless Ln.
Honolulu, HI 96817
Ph. 847-0784

Youn-chz Hu
Ph. 926-3618

Dagmar Suzuki
Ph. 599-5153

Robert Hart
Ph. 593-4755

Tom Bummel
Ph. 293-4755

Keola Nahalea
Ph. 293-2033

Registrar Won
634 Pensacola Street
Honolulu, HI  96814
Mr. Won was and is the McKinley Community School for Adults
Registrar and will testify about the popularity of Mr.
Sherez' classes there over the years and the fact that
despite that, his classes were ceased and ended suddenly in
Mid-term.

Vice Principal Amine

Principal H. Sanpei

Any witnesses identified by Defendants in this litigation.

**(j) Exhibits.**

1.  Employment records of Plaintiff and other similarly situated teachers hired for jobs that Plainti was denied.

2.  Home Hospital records.

3.  Tutoring records.

4.  Time sheets.

5.  Unemployment records.

6.  Progress reports.

7.  Windward Oahu District office records.

8.  Home-Hospital Instruction Service guidelines.

9.  Hawaii District Office records.

10. McKinley Community School for adults record.

11. Correspondence to and from the Plaintiff.

12. EEOC documents.

13. Hawaii Civil Rights Commission documents.

14. Exhibits identified by Defendants in this litigation.

**(k) Further Discovery or Motions.**

The Plaintiff has filed a Motion To Continue the Trial due to a trial scheduling conflict, and the need to file a Motion to Compel the Defendants to produce requested evidence and documents which was granted, however, we still have not had access to the documents.    And therefore are hampering in conducting

worthwhile depostions of certain witnesses and Defendants.
Hence, Plaintiff needs a continuance of a few months to pursue
discovery, given the road blocks and hurdles Defendatn has placed
in Plaintiff's path requiring motions and delays.

Though the Magistrate denied this motion, Plaintiff filed an
appeal to the District Judge on September 19, 2005, because the
trial conflict is real and the delays in discovery deny Plaintiff
a fair opportunity at a fair trial so far in this case.

**(l) Stipulations.**

No stipulations have been requested or proposed for pretrial
or trial purposes.

**(m) Amendments, Dismissals.**

The Court allowed the Plaintiff to amend his First Amended
Complaint.

**(n) Settlement Discussion.**

The Plaintiff, based upon the calculations of his financial
losses ofver two and a half years since filing this complaint,
and six months of loses before that in the Administrative
process, and considering a sum for his Compensatory damages for
the violation of his Constitutional Rights and the Defendants
Intentionally Inflicting emotional distress upon his callously by
their actions, and considering that plaintiff does have nearly
three year of Attorney's fees invested in this case, offered to
settle for $120,000.00 over a year ago.

The Defendants responded with more harassment, for which Plaintiff has filed another suit.    A Settlement conference is presently set for December 7, 2006.    If settlement is accomplished for Bot cases at that time, that sum will be necessary for Plaintiff claims, and an appropriate amunt for his attorney's fees and costs are assessable under 42 U.S. C. 1988 as also necessary to make Plaintiff whole.

**(o) Agreed Statement.**

Plaintiff does not agree to have any portion of his presentation based upon agreed facts.

**(p) Bifurcation, Separate Trial of Issues.**

Not necessary.

**(q) Reference to Master or Magistrate Judge.**

Not appropriate.

**(r) Appointment and Limitation of Experts.**

None.

**(s) Trial.**

Trial is scheduled for March 27, 2007, Jury trial was timely requested.

**(t) Estimate of Trial Time.**

Plaintiff estimates five days.

**(u) Claims of Work Privilege or Work Product.**

None.

DATED: Honolulu, Hawaii _____

27

_____
ANDRE S. WOOTEN
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

ROBERT SHEREZ,                          )    Civil No. 04-00390 HG-KSC
                                        )
                    Plaintiff,          )    CERTIFICATE OF SERVICE
                                        )
        vs.                             )
                                        )
STATE OF HAWAII                         )
DEPARTMENT OF EDUCATION;                )
PATRICIA HAMAMOTO,                      )
Superintendent of Hawaii Schools;       )
Schools; MEREDITH MAEDA,                )
Principal of Castle High School; SARA   )
GRONNER or GRONNA, Vice                 )
Principal of Castle High School,        )
                                        )
                    Defendants.         )
_____)

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was duly served by hand delivery

upon the following person(s) on ___November 24, 2006_____.

                MARK J. BENNETT, ESQ.
                Attorney General
                JAMES E. HALVORSON, ESQ.
                NELSON Y. NABETA, ESQ.
                Deputy Attorneys General
                Department of the Attorney General
                Employment Law Division
                235 South Beretania St., 15th Floor
                Honolulu, Hawaii 96813
                Attorneys for Defendants

DATED: Honolulu, Hawaii, _____November 24, 2006_____.

                ANDRE' S. WOOTEN
                Attorney for Plaintiff