IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ROBERT SHEREZ,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAIʻI DEPARTMENT OF EDUCATION; PATRICIA HAMAMOTO, Superintendent of Hawaiʻi Schools, MEREDETH MAEDA, Principal, Castle High School; SARA GRONNER OR GRONNA, Vice Principal of Castle High School,<br><br>Defendants. | CIVIL NO. 04-00390 JMS-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I.    BACKGROUND

  A.    Second Amended Complaint

On December 21, 2005, Plaintiff filed his Second Amended Complaint (hereinafter "Complaint"). The Complaint alleges that the Plaintiff worked for the Department of Education as a part time tutor for the Home-Hospital Instructional Services program, from 1989 to 2005, in both the Windward and Honolulu Districts of Oahu. Complaint, ¶¶ 1, 4, 5 and 25. The Complaint also alleges that Defendant Meredith Maeda was the principal of Castle High School from 1999 to

2005.  During this time period, Defendant Maeda supervised Defendant Sarah Gronna, who served as the vice principal of the school.  Complaint, ¶ 4.

The Complaint states that Martin Mattison was the supervisor of the Home-Hospital Instructional Services program for the Windward District.  In 2003, Mr. Mattison informed the Plaintiff of new rules apparently adopted by the Home-Hospital Instructional Services program that were "unwritten".  The Complaint stated that Mr. Mattison explained that this policy prohibited the assignment of male teachers as tutors from female students.   Complaint, ¶¶ 19, 25.  The Complaint alleges that Mr. Mattison, Defendant Maeda and Defendant Gronna enforced this discriminatory policy against the Plaintiff preventing him from becoming a tutor for female students.  Complaint, ¶¶ 5-7.  The Complaint also alleges that the Honolulu District Office also enforced the purported unwritten policy against the Plaintiff.  Complaint, ¶ 16.

The Complaint further alleges that the Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission based on gender discrimination.  After the Plaintiff filed his charge, he was terminated as a teacher at the McKinley Community School for Adults.  Complaint, ¶¶ 12-13, 26.

Based on these allegations, the Plaintiff asserted the following claims against Defendant State of Hawaii, Department of Education:

Cause of Action I:  Violation of Title IX
Cause of Action II: Violation of Title IX Deliberate Indifference
Cause of Action III:  Intentional Infliction of Emotional Distress
Cause of Action IV:  Violation of 42 U.S.C. § 1985
Cause of Action V:  Violation of 42 U.S.C. § 1986
Cause of Action VI: Violation of 42 U.S.C. § 1983
Cause of Action VII:  Violation of Chapter 378, Haw. Rev. Stat.
Cause of Action VIII: Violation of Title VII

B.      Prior Ruling Of This Court

Earlier, this Court had ruled that the following causes of action against

Defendant State of Hawaii, Department of Education be dismissed, by Order

Granting in Part and Denying in Part Defendants' Motions for Judgment on the

Pleadings, filed on September 1, 2005:

Cause of Action III:  Intentional Infliction of Emotional Distress
Cause of Action IV: Violation of 42 U.S.C. § 1985
Cause of Action V:  Violation of 42 U.S.C. § 1986
Cause of Action VI:  Violation of 42 U.S.C. § 1983
Cause of Action VII:  Violation of Chapter 378, Haw. Rev. Stat.

The remaining causes of actions against Defendant State of Hawaii,

Department of Education are as follows:[1]

Cause of Action I:  Violation of Title IX
Cause of Action II: Violation of Title IX Deliberate Indifference
Cause of Action VIII: Violation of Title VII

---

[1] Remaining causes of actions against Defendant Gronna, in her official capacity, for injunctive relief only are:
Cause of Action IV: Violation of 42 U.S.C. § 1985
Cause of Action V:  Violation of 42 U.S.C. § 1986
Cause of Action VI:  Violation of 42 U.S.C. § 1983

C.     Statement of Facts

During the time period alleged in the Complaint, Martin Mattison and Beverly Reidy administered the Home-Hospital Instructional Services program out of the Windward District Office.  The program provided instruction by tutors to students in the Windward Oahu District who were not able to attend school because of medical reasons.  Declaration of Beverly Reidy, ¶ 3.  Mr. Mattison supervised the program for the Castle/Kahuku complexes and Ms. Reidy supervised program for the Kailua/Kaleheo complexes.  Declaration of Martin Mattison, ¶ 1[2]; Declaration of Beverly Reidy, ¶ 1.  Both Mr. Mattison and Ms. Reidy state that the program had no policy that prohibited the assignment of a male teacher to serve as a tutor for a female student. Declaration of Martin Mattison, ¶ 2; Declaration of Beverly Reidy, ¶ 5.

Also, during the time period alleged in the Complaint, Defendant Maeda served as principal of Castle High School.  As the Principal, he was responsible for the overall administrative oversight of the entire school and its programs. Declaration of Meredith Maeda, ¶¶ 1-2[3].  Furthermore, during the school years of 2001-2002 and 2002-2003, Defendant Sarah Gronna served as one of three vice

---

[2] The Declaration of Martin Mattison was previously filed in support of the Defendant State of Hawaii's prior Motion for Summary Judgment filed on June 14, 2005.  Mr. Mattison passed away in early 2006.  A copy of Mr. Mattison's filed declaration is attached hereto for the Court's review.

[3] The Declarations of Meredith Maeda and Sarah Gronna in support of their Motion for Summary Judgment were filed contemporaneously with the present Motion.  Copies of their Declarations are attached hereto for the Court's review.

principals for Castle High School.  Declaration of Sarah Gronna, ¶ 2.  Both

Defendants Maeda and Gronna stated that the Home-Hospital Instructional

Services program did not have a policy that prohibited the assignment of a male

teacher as a tutor for a female student.  Declaration of Meredith Maeda, ¶ 3;

Declaration of Sarah Gronna, ¶ 3.

Additionally, during the time period alleged in the Complaint, Pauline

Kokubun administered the Home-Hospital Instructional Services program out of

the Honolulu District Office.  Ms. Kokubun stated that the program administered

out of the Honolulu District Office had no policy that prohibited the assignment of

a male teacher to serve as a tutor for a female student.  Declaration of Pauline

Kokubun, ¶¶ 1, 4.  Instead, the program administered out of both the Windward

and Honolulu District Offices maintained a pool of teachers willing to serve as

tutors.  The program assigned tutors on a rotating basis that allowed for all the

available persons to obtain assignments on a fair basis, for the good of the students.

This method was used in order to maintain the number of teachers in the pool that

the program could call upon.  Declaration of Martin Mattison, ¶ 4, Declaration of

Beverly Reidy, ¶ 4, Declaration of Pauline Kokubun, ¶ 3.

Finally, during the time period alleged in the Complaint, Helen Sanpei

served as the principal of the McKinley Community School for Adults.  As the

principal, Ms. Sanpei was responsible for the overall administrative oversight of

the entire school, including the supervision of the school's students, teachers and programs. In particular, Ms. Sanpei was responsible for the hiring of teachers for the various classes. Declaration of Helen Sanpei, ¶¶ 1-2. The teachers of the McKinley Community School for Adults are considered casual, part time employees, and hired specifically to teach particular classes at the school. The hiring of a part time teacher to teach a particular class depends on the enrollment of students for the class, the availability and qualifications of the teachers who express an interest in teaching the course. The McKinley Community School for Adults holds classes during three semesters each year. Declaration of Helen Sanpei, ¶¶ 3-4.

The Plaintiff was hired to teach a GED class in the fall semester of 2002 and the spring semester of 2003. Declaration of Helen Sanpei, ¶ 5. Near the end of the spring semester of 2003, the Plaintiff was notified that he would not be needed to teach the course during the succeeding semester. Declaration of Helen Sanpei, ¶ 6. The Plaintiff completed teaching the GED class in the spring semester of 2003. Declaration of Helen Sanpei, ¶ 7. The Plaintiff was not hired to teach the succeeding semester because the smaller student enrollment would support only one class and a more qualified teacher was selected to teach that class. Declaration of Helen Sanpei, ¶ 6.

II.    ARGUMENT

    A.    Summary Judgment Should Be Granted On Behalf Of Defendant State of Hawaii, Department Of Education On Cause Of Action VIII (Violations Of Title VII)

The Complaint alleges that an allegedly discriminatory policy was enforced against the Plaintiff because of his gender.  The purported policy prohibited male teachers from instructing female students.  Consequently, where a plaintiff alleges a facially discriminatory policy, the analysis of the disparate treatment theory is applied.  Healey v. Southwood Psychiatric Hospital, 78 F.3d 128, 131-32 (3rd Cir. 1996).

The disparate treatment theory of discrimination applies to cases such as the present one where an employer is alleged to have treated some person less favorably than others because of his or her race, color, religion, sex or national origin.  International Brotherhood of Teamsters v. United States, 431 U.S. 324, 334-43 (1977).  Under this theory, proof of discriminatory motive is critical.  Id. at 335 n. 15; Gay v. Waiters' and Dairy Lunchmen's Union, 694 F.2d 531, 537 (9th Cir.1982).

When a plaintiff, as in this case, claims that unlawful discrimination is the sole motive for the employment action, courts have held that the plaintiff must establish a prima facie case of discrimination.  The burden of production then shifts to the defendant to articulate a legitimate non-discriminatory reason for the

adverse employment decision.  If the defendant carries this burden, the plaintiff must then demonstrate that the defendant's reason was a pretext for discrimination. Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir.1985) (quoting McDonnell Douglas v. Green, 411 U.S. 792 (1973)).  This burden shifting analysis is applicable whether the plaintiff chooses to prove the discriminatory motivation by direct or indirect evidence.  Kishaba v. Hilton Hotel Corporation, 737 F.Supp 549, 553 (D.Haw. 1990).

Under these standards, a plaintiff's burden on summary judgment is to establish a prima facie case of discrimination, and, if the employer articulates a legitimate, non-discriminatory reason for its actions, to raise a genuine factual issue as to whether the articulated reason was pretextual.  Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109-10 & n. 7 (9th Cir.1991) (citing McDonnell Douglas, 411 U.S. at 802, (1973).

In the same way, the burden-shifting analysis set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973); is held to apply in claims of employment retaliation.  Miller v. Fairchild Industries, Inc., 797 F.2d 727, 730-31 (9th Cir. 1986).  Again, under the McDonnell Douglas analysis, a plaintiff must first establish a prima facie case of retaliation. The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment action.  If the employer meets this burden, the

presumption of retaliatory motivation disappears, but the plaintiff can still prove retaliation by offering evidence demonstrating that the employer's explanation was pretextual. Thus, once the employer offers a legitimate, non-retaliatory reason for its action, the burden shifts to the employee to demonstrate that the articulated reason is a pretext for discrimination. Smith v. Barton, 914 F.2d 1330, 1340 (9th Cir. 1990. Unless the plaintiff can show that the explanation was a pretext for retaliation, the plaintiff has presented no triable issue and summary judgment should be granted. Collings v. Longview Fibre Co., 63 F.3d 828, 833 (9th Cir. 1995.

In this case, the Plaintiff's gender discrimination claim is based on the existence of a purportedly discriminatory policy that prohibited male teachers from serving as tutors for female students. However, the facts show that there was no such policy. Although the Complaint alleges that the existence of the alleged policy is proved in a statement by Mr. Mattison, testimony shows the contrary. Mr. Mattison stated that there was no policy that prohibited male teachers to serve as tutors for female students. Declaration of Martin Mattison, ¶ 2. Ms. Reidy and Ms. Kokubun also had stated that there was no such policy. Declaration of Beverly Reidy, ¶ 5. Declaration of Pauline Kokubun, ¶ 4. Consequently, Plaintiff failed to establish a prima facie case for gender discrimination.

However, assuming that a prima facie case was shown, Defendant State of Hawaii had established a legitimate non-discriminatory reason for how the program selected tutors for its students. Instead of the supposed discriminatory policy, the method of assigning tutors was not based on gender. The assignments depended on the availability of the tutor, the good of the student, and allowing the as many teachers as possible to have some opportunity to serve as a tutor. In this way, the program could maintain the number of teachers that it could call upon in the future.

Also in this case, the retaliation claim is based on the Plaintiff's claim that he was terminated in "mid-course" from a teaching position in the McKinley Community School for Adults. Complaint ¶¶ 12-13, 26. However, the facts show that he was never terminated. The Plaintiff was hired only to serve as a teacher for one class, during one semester. He did complete teaching the class. Furthermore, the Plaintiff was not asked to teach the same class in the next semester because the enrollment of students had dropped and another more qualified teacher had been selected to teach that class. Consequently, the facts show that the termination did not occur and the school's decision was not related to any alleged protected activity. Therefore, the Plaintiff failed to establish a prima facie case for retaliation.

However, assuming that a prima facie case was shown, the Defendant State of Hawaii had established a legitimate non-retaliatory method as to how teachers are selected at the McKinley Community School for Adults. Instead of the presumed retaliatory motive alleged in the Complaint, the method of selecting teachers was based on a combination of non-relatilatory factors that included student enrollment, teacher availability, and teacher qualifications. Declaration of Helen Sanpei, ¶ 3. Consequently, the Plaintiff bears the burden to show by specific and substantial evidence that the actions and reasons of the Defendant State of Hawaii were pretext for both discrimination and retaliation. Absent such evidence, summary judgment should be granted.

     B.    Summary Judgment Should Be Granted On Behalf Of Defendant State Of Hawaii, Department Of Education On Causes Of Action I and II (Violations Of Title IX)

It is well established that courts have consistently applied the Title VII standards to Title IX claims. <u>Oona, R.S. McCaffrey</u>, 143 F.3d 473 (9th Cir. 1998); <u>Gallant v. Board of Trustees of California State University</u>, 997 F. Supp 1231 (N.D. Cal. 1998); <u>Doe v. Petaluma City School District</u>, 949 F. Supp 1415 (N.D. Cal. 1996).

In this case, the Plaintiff had failed to establish a prima facie case for both gender discrimination and retaliation under Title VII. Moreover, upon a showing that the employer's reasons for its actions were non-discriminatory and non-

retaliatory in nature, the Plaintiff is unable to show that these reasons were a pretextual. Consequently, the Plaintiff's claim under Title VII is insufficient, as a matter of law. Applying the same standards to the Plaintiff's Title IX claims, would result in the determination that these claim too are similarly insufficient and summary judgment should be granted.

DATED:    Honolulu, Hawai`i, December 18, 2006.

NELSON Y. NABETA
Deputy Attorney General

Attorney for Defendants