IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ROBERT SHEREZ,<br><br>        Plaintiff,<br><br>vs.<br><br>STATE OF HAWAI'I DEPARTMENT OF EDUCATION; PATRICIA HAMAMOTO, Superintendent of Hawai'i Schools, MEREDETH MAEDA, Principal, Castle High School; SARA GRONNER OR GRONNA, Vice Principal of Castle High School,<br><br>        Defendants. | CIVIL NO. 04-00390 JMS-KSC<br><br>MEMORANDUM IN SUPPORT OF MOTION |

<u>MEMORANDUM IN SUPPORT OF THE MOTION</u>

I.    BACKGROUND

    A.    Second Amended Complaint

On December 21, 2005, the Plaintiff filed his Second Amended Complaint (hereinafter "Complaint"). The Complaint alleges that the Plaintiff worked for the Department of Education as a part time tutor for the Home-Hospital Instructional Services program from 1989 to 2005. Complaint, ¶¶ 1, 4, 5 and 25. The Complaint also alleges that Defendant Meredith Maeda was the principal of Castle High School from 1999 to 2005. During this time period, Defendant Maeda supervised Defendant Sarah Gronna, who served as the vice principal of the

school. Complaint, ¶ 4. The Complaint alleges that Defendant Gronna, as vice principal, was placed in charge of the selection of tutors for the Home-Hospital Instructional Services program for Castle High School. Complaint, ¶ 5.

The pleading alleges that in 2003, Defendant Gronna enforced a policy barring male tutors, such as the Plaintiff, from being selected to teach female students. Complaint, ¶¶ 1, 5. According to the Complaint, the policy originated from the director of the Home-Hospital Instructional Services program for the Windward District. The Complaint alleges that the director of the program, Martin Mattison, told the Plaintiff that the policy was an "unwritten" rule. Complaint, ¶¶ 19, 25.

Based on these allegations, the Plaintiff asserted the following claims against Defendants Maeda and Gronna, in their individual capacities:

Cause of Action I:  Violation of Title IX
Cause of Action II: Violation of Title IX Deliberate Indifference
Cause of Action III: Intentional Infliction of Emotional Distress
Cause of Action IV: Violation of 42 U.S.C. § 1985
Cause of Action V: Violation of 42 U.S.C. § 1986
Cause of Action VI: Violation of 42 U.S.C. § 1983
Cause of Action VII: Violation of Chapter 378, Haw. Rev. Stat.
Cause of Action VIII: Violation of Title VII

B.   Prior Ruling of this Court

Earlier, this Court had ruled that the following causes of action against the individual defendants had been dismissed, by Order Granting in Part and Denying

in Part Defendants' Motions for Judgment on the Pleadings, filed on September 1, 2005:

>  Cause of Action I:   Violation of Title IX
>  Cause of Action II:  Violation of Title IX Deliberate Indifference
>  Cause of Action III: Intentional Infliction of Emotional Distress
>  Cause of Action VIII: Violation of Title VII

The remaining causes of actions against the individual defendants are as follows:

>  Cause of Action IV: Violation of 42 U.S.C. § 1985
>  Cause of Action V:  Violation of 42 U.S.C. § 1986
>  Cause of Action VI: Violation of 42 U.S.C. § 1983
>  Cause of Action VII: Violation of Chapter 378, Haw. Rev. Stat.

C.   Statement of Facts

During the time period alleged in the Complaint, Defendant Maeda served as the principal of Castle High School. As the principal, he was responsible for the overall administrative oversight of the entire school and its programs. He was assisted in this regard by three vice principals, each of whom are assigned various supervisory duties. Declaration of Meredith Maeda, ¶¶ 1-2. One of the school's programs was the Home-Hospital Instructional Services program that provided instruction through tutors for students who were not able to attend school for medical reasons. This program did not have a policy that prohibited the assignment of a male teacher as a tutor for a female student. Declaration of Meredith Maeda, ¶ 3. Moreover, Defendant Maeda was never authorized to

establish such a prohibition for this tutoring program, and therefore, never established such a policy. Declaration of Meredith Maeda, ¶ 3. In the period of time alleged in the Complaint, Defendant Maeda assigned a vice principal to oversee the implementation of this program on behalf of students of the school. The assigned vice principal would coordinate the school's efforts to obtain tutorial services for a Castle High School student through the Windward District Office that administered the program. However, during this period of time, Defendant Maeda did not select or assign or hire any tutors on behalf of any students of Castle High School with regards to the Home-Hospital Instructional Services program. Declaration of Meredith Maeda, ¶ 4.

During the school years of 2001-2002 and 2002-2003, Defendant Sarah Gronna served as one of three vice principals for Castle High School. Declaration of Sarah Gronna, ¶ 2. As a vice principal, Defendant Gronna was assigned a number of duties, but she was not assigned to supervise the Home-Hospital Instruction Services program at her school. Declaration of Sarah Gronna, ¶¶ 2-3. As far as she knew, this program did not prohibit the assignment of a male teacher as a tutor for a female student. Declaration of Sarah Gronna, ¶ 3.

In July 2002, the Home-Hospital Instructional Services program had begun to institute new procedures for services, including the assignment of tutors. Part of the new procedures included new forms to be completed and authorizing the

schools to select a qualified tutor to instruct the student. However, since the new procedures were being first implemented during the 2002-2003 school year, the Windward District Office advised Castle High School that the Home-Hospital Instructional Services program would retain the sole authority to select and assign the tutors. Declaration of Sarah Gronna, ¶ 5.

Later, early in the 2002-2003 school year, when the vice principal assigned to oversee this program on behalf of students of Castle High School had been on leave, a counselor approached Defendant Gronna with an outdated application form for a tutor in the Home-Hospital Instructional Services program on behalf of a pregnant female student. The form indicated that the student would be tutored by Robert Sherez. Declaration of Sarah Gronna, ¶ 6. In accordance with the instructions of the Windward District Office, Defendant Gronna had a correct application form completed and forwarded to the program, in order for the program to select the tutor. Defendant Gronna did not select any particular individual to serve as the tutor for the female student. Declaration of Sarah Gronna, ¶¶ 6-7. During the period of time alleged in the Complaint, Defendant Gronna did not make any selection of tutors on behalf of any students of Castle High School with regards to the Home-Hospital Instructional Services program. Declaration of Sarah Gronna, ¶ 8.

Finally, Martin Mattison, the educational specialist who supervised the Home-Hospital Instructional Services program from the Windward District Office, stated that the program did not prohibit the assignment of a male teacher to serve as a tutor for a female student. Declaration of Martin Mattison, ¶¶ 1-2[1]. Furthermore, Mr. Mattison confirms Defendant Gronna's statement that the Home-Hospital Instructional Services program retained the sole authority to select and assign tutors during the 2002-2003 school year. Declaration of Martin Mattison, ¶ 3. During that time period, the program assigned tutors on a rotating basis in order to maintain the number of persons in the pool that the program could call upon. Declaration of Martin Mattison, ¶ 4.

II.   ARGUMENT

    A.   Summary Judgment Should Be Granted On Behalf Of Defendants Maeda And Gronna On Causes Of Actions IV and V (Violations of §§ 1985 and 1986, Respectively)

        1.   <u>As A Matter of Law, The Complaint Has Failed To Sufficiently Allege A Claim of Conspiracy Under § 1985.</u>

The Complaint asserts a claim of conspiracy against Defendants Maeda and Gronna pursuant to §§1985 and 1986. However, the Complaint plainly fails to allege that Defendants Maeda and Gronna were part of any agreement to deprive anyone of a protected right.

---

[1] The Declaration of Martin Mattison was previously filed in support of the Defendant State of Hawaii's prior Motion for Summary Judgment filed on June 14, 2005. Mr. Mattison passed away in early 2006. A copy of Mr. Mattison's filed declaration is attached hereto for the Court's review.

Under the analysis as set forth in Griffin v. Breckenridge, 403 U.S. 88 (1971), there are four elements that must be established in order to prove a conspiracy: (1) that the defendants had an agreement with at least one other person and participated or caused something to be done in furtherance of the agreement; (2) that the agreement was to deprive the plaintiff of a protected right; (3) that the defendants were motivated by a dislike or hateful attitude toward a specific class of people and that the plaintiff was a member of that class; and (4) that the conspiracy caused deprivation or injury to the plaintiff. Id. at 103-104. However, a claim of conspiracy must allege facts to support the allegation that defendants actually conspired together. The mere allegation of conspiracy without specific factual basis is not sufficient. Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir.1988).

In this case, the Complaint fails to allege a sufficient claim for conspiracy against Defendants Maeda and Gronna. The Complaint alleges that the supposed discriminatory policy was purportedly adopted by the Home-Hospital Instructional Services program through the office of Mr. Mattison. Complaint, ¶ 19. There are no specific allegations that Defendants Maeda and Gronna actually participated in the formulation of this alleged policy. Further, there are no specific allegations that Defendants Maeda and Gronna agreed with Mr. Mattison to use this policy to deprive the Plaintiff of a protected right. Consequently, because the Complaint

could not even allege specific facts showing an agreement between Defendants Maeda and Gronna and Mr. Mattison, the claim of conspiracy is legally insufficient.

    2. <u>The Evidence Shows That There Was No Agreement To Deprive the Plaintiff of a Protected Right.</u>

In this case, not only does the Complaint fail to allege a sufficient claim for conspiracy, the facts do not show an agreement to deprive the Plaintiff of a protected right. The Plaintiff's conspiracy theory rests on a purported "unwritten" discriminatory policy of the Home-Hospital Instructional Services program. Complaint, ¶¶ 19, 25. However, the facts do not show the existence of the policy. There was no such policy. Declaration of Meredith Maeda, ¶ 3, Declaration of Martin Mattison, ¶ 2, Declaration of Sarah Gronna, ¶ 3. Absent this policy, there could be no agreement upon which Defendants Maeda and Gronna could be held liable under § 1985.

    3. <u>The Claim of Civil Conspiracy Under § 1985 is Barred.</u>

The intra-corporate conspiracy doctrine provides that, as a matter of law, a corporation cannot conspire within itself through its own employees or agents. <u>Dombrowski v. Dowling</u>, 459 F.2d 190, 193 (7th Cir. 1972). The rationale for the doctrine derives from the nature of the claim of conspiracy that requires a meeting of minds. Two people, or two entities are required to claim conspiracy. As such, the agreement cannot be premised on the meeting of the minds of two agents, or

two employees of the same corporation. Hoefer v. Fluor Daniel, Inc., 92 F.Supp.2d 1055, 1057-59 (C.D.Cal. 2000).

Courts have held that the "intra-corporate conspiracy" doctrine applies to § 1985 cases, holding that a governmental body cannot conspire with itself, and that individual members of a governmental body cannot conspire when they act in their official capacities to take official actions on behalf of the governing body. Runs After v. United States, 766 F.2d 347, 354 (8th Cir. 1985); Gladden v. Barry, 558 F.Supp. 676, 679 (D.D.C. 1983); Edmonds v. Dillin, 485 F.Supp. 722, 729 (N.D.Ohio, 1980). Consequently, courts have held that the doctrine is a bar to a § 1985 claim where the conspiratorial conduct challenged is essentially a single act by a single governmental body acting exclusively through its own officers, each acting within the scope of his or her official capacity. Rabkin v. Dean, 856 F.Supp. 543, 551-2 (N.D.Cal. 1994).

In this case, even if the Complaint were interpreted to allege an agreement between Defendants Maeda and Gronna and any of the other individuals identified in the pleading, the doctrine would bar the conspiracy claim because all of the persons are employees of the same governmental department.

4. There is No Viable Claim Pursuant to § 1986.

§ 1986 provides a claim against "every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation." Sanchez

v. City of Santa Ana, 936 F.2d 1027, 1040 (9th Cir. 1990). Therefore, a claim pursuant to § 1986 depends on the existence of a valid claim under § 1985. McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990); Karim-Panahi v. L.A. Police Dep't., 839 F.2d 621, 626 (9th Cir. 1988). Consequently, where a plaintiff's claim under §1985 fails, the companion claim pursuant to § 1986 will also fail. Logan v. West Coast Benson Hotel, 981 F.Supp. 1301, 1317 (D.Or. 1997).

In this case, because the Plaintiff failed to allege a sufficient claim of conspiracy and the application of the intra-corporate doctrine, Plaintiff's claim under §1986 is not viable and must be dismissed.

  B. Summary Judgment Should Be Granted On Behalf Of Defendants Maeda And Gronna On Cause Of Action VI (Violations Of § 1983)

42 U.S.C. § 1983 provides in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress[.]

A violation of equal protection may be remedied in an action brought under 42 U.S.C. § 1983 upon a showing that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was

motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or to inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. FSK Drug Corp. v. Perales, 960 F.2d 6, 10 (2nd Cir. 1992), citing Wayte v. United States, 470 U.S. 598, 608-09 (1985). Yerardi's Moody St. Restaurant v. Bd. of Selectmen, 932 F.2d 89, 92 (1st Cir. 1991). But the equal protection clause's proscription of differential treatment applies only where individuals are similarly situated. Eisenstadt v. Baird, 405 U.S. 438, 446-47 (1972).

Therefore, a prima facie case of discrimination in cases brought under the equal protection clause and 42 U.S.C. § 1983 requires proof of intentional discrimination. Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 537 (9th Cir.1982). Under § 1983, a plaintiff claiming discrimination in employment must prove that the employer was motivated by a discriminatory purpose. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984); Washington v. Davis, 426 U.S. 229, 239-41, 96 S.Ct. 2040, 2047-48, 48 L.Ed.2d 597 (1976). Stones v. Los Angeles Community College District, 796 F.2d 270, 279 (9 th Cir. 1986). As such, a teacher who could not demonstrate that there was an improper motive underlying employment practice or policy failed to demonstrate a cause of action

under 42 U.S.C.A. § 1983. Chavez v. Tempe Union High School Dist. No. 213, 565 F.2d 1087, 1095 (9 th Cir. 1977).

Furthermore, in cases involving discrimination in employment brought under § 1983, the burden shifting analysis is the same as cases arising under Title VII. Wilson v. Legal Assistance of North Dakota, 669 F.2d 562, 563-63 (8th Cir. 1983). This includes the establishment of a prima facie case and the analysis used in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). In that case, the court clearly indicated that a defendant bears only the burden of explaining clearly the non-discriminatory reasons for her actions. Id. at 260.

In this case, the Plaintiff cannot put forth a prima facie case because there is no evidence of intentional discrimination on the part of Defendants Maeda and Gronna. First, the Plaintiff's theory of liability against Defendants Maeda and Gronna rests on the existence of a purportedly discriminatory policy of the Home-Hospital Instructional Services program. According to the Plaintiff, this policy was the vehicle which Defendants Maeda and Gronna used to discriminate against the Plaintiff. However, the facts plainly show that the policy described in the Complaint did not exist. Declaration of Meredith Maeda, ¶ 3, Declaration of Sarah Gronna, ¶ 3, Declaration of Martin Mattison, ¶ 2. Using the Plaintiff's logic, absent the existence of the purported policy, there would be no method to intentionally discriminate against the Plaintiff.

Second, assuming the alleged policy existed, there is no evidence of intentional discrimination because Defendants Maeda and Gronna did not personally participate in depriving the Plaintiff of any tutoring assignments under the program. Both Defendants during the time alleged in the Complaint did not participate in the selection of tutors under the program. Defendant Meredith Maeda had no occasion to personally select any tutors because this matter was delegated to other school officials. Declaration of Meredith Maeda, ¶ 4. Defendant Gronna too, had no occasion to personally select any tutors because the program retained sole authority to select tutors. Declaration of Sarah Gronna, ¶¶ 5-6. Consequently, Defendants Maeda and Gronna cannot be liable based on this federal statute for lack of personal participation in the deprivations claimed in the Complaint. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

However, even if the Plaintiff did somehow establish a prima facie case, it is clear that the Defendants' actions and reasons were non-discriminatory. During the specific time alleged in the Complaint, the program retained the sole authority to select and assign tutors. Declaration of Sarah Gronna, ¶ 4; Declaration of Martin Mattison, ¶ 3. Accordingly, any decision to select and assign tutors was made by the program and not by Defendants Maeda and Gronna. Declaration of Sarah Gronna, ¶¶ 4-7. The selection of tutors by the program used a rotational system of assignment that fairly distributed the work in order to maintain the pool

of qualified teachers. Declaration of Martin Mattison, ¶ 4. Consequently, Defendants Maeda and Gronna properly allowed the program to fairly select the tutors for the students. Both Defendants have established that their actions and reasons were completely non-discriminatory. As such, the Plaintiff bears the burden to show by specific and substantial evidence that the actions and reasons of Defendants Maeda and Gronna were a pretext for discrimination without which summary judgment should be granted.

III. CONCLUSION

Courts have held that where the federal claims are dismissed, or summary judgment is granted on the claims based upon federal law, the state claims should be dismissed. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984). Further, it has been the Ninth Circuit's practice to dismiss state law claims if all federal claims are dismissed before trial. Danner v. Himmelfarb, 858 F.2d 515, 523 (9th Cir. 1988).

In this case, based on the foregoing, there are no viable federal claims, against Defendants Maeda and Gronna, in their individual capacities, based on §§ 1985, 1986 and 1983 (Causes of Action IV, V and VI, respectively). As such, this Court should decline to exercise supplemental jurisdiction over the remaining state

claim against Defendants Maeda and Gronna contained in Cause of Action VII (violation of Chapter 378, Haw. Rev. Stat.).

DATED:   Honolulu, Hawai`i, December 18, 2006.

_____
NELSON Y. NABETA
Deputy Attorney General

Attorney for Defendants