LAW OFFICES OF ANDRÉ S. WOOTEN
Attorney and Counselor at Law

ANDRÉ S. WOOTEN          3887
Century Square,          Suite 1909
1188 Bishop Street
Honolulu, Hawai`i          96813
Telephone:     (808) 545-4165

Attorney for Plaintiff
ROBERT SHEREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF Hawai`i

| | |
|---|---|
| ROBERT SHEREZ, | CIVIL NO.   04-00390 JMS-KSC |
| Plaintiff, | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS STATE DEPARTMENT OF EDUCATION AND MEREDITH MAEDA AND SARA GRONNA'S MOTIONS FOR SUMMARY JUDGEMENT |
| vs. | |
| STATE OF HAWAII DEPARTMENT OF EDUCATION; PATRICIA HAMAMOTO, Superintendent of Hawaii Schools, MEREDETH MAEDA, Principal, Castle High School; SARA GRONNER OR GRONNA, Vice Principal of Castle High School. | |
| | Date of Hearing:   February 12, 2007 |
| | Time: 9:00 AM |
| | Judge: Hon.  Michael Seabright |
| Defendants. | |
| | Trial Date: March 28,  2007 |
| | CERTIFICATE OF SERVICE |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT STATE DEPARTMENT OF EDUCATION AND MEREDITH MAEDA AND SARA GRONNA'S MOTIONS FOR SUMMARY JUDGEMENT**

Comes Now the Plaintiff, ROBERT SHEREZ, by and through his attorney, Andre' Wooten, hereby files this instant Memorandum in Opposition and Concise Counter-Statement of Facts in opposition

to the Defendants Motions for Summary Judgment filed December 18, 2006.

The Defendant State of Hawaii Department of Education argues that the court should dismiss remaining Counts I, II, & VIII of Plaintiff's Second Amended Complaint.  However, the arguments advanced by the State however are not sufficient to over come the offer of proof of Plaintiff establishing material issues of facts in this case which are sufficiently material for the  Plaintiff to have the right to present his evidence and case to a jury in trial.

    I.          Violation of Title IX.

    II.         Deliberate Indifference.

    III. Violation of 42 U.S.C. 2000(e), Title VII.

Clearly,  Defendant State of Hawaii Department of Education, can be held liable under  and law is for tort violations in Federal Court, and Federal Civil Rights violation over which the Federal law confers original jurisdiction in Federal court and comity jurisdiction of State tort claims arising out of the same facts involving the individuals who acted for the state in their official and individual capacities.

### 1. BRIEF STATEMENT OF FACTS

As Mr. Sherez stated in these paragraphs in his Declaration filed in Opposition To Defendant's Concise Statement of Facts:

> 12.    Since I earned a J.D. I was paid at the highest level in the DOE for part-time teachers at class 3 level.
> 13.    I was first employed by Fran Jorgenson,

>   who was head of the Special Education division for the
>   Windward Office tutoring from 1988 until she retired in
>   the Mid 1990's.
>       14.    The school with the tutor need always had
>   an opportunity to put in for a "recommended" teacher.
>   There was an opening on the official form for them to
>   write in their "recommendation."    If they did not
>   request someone, then the District would fill the tutor
>   opening from the list of available tutors.
>       15.    They were supposed to call all the # 3
>   level tutors, like Plaintiff first, and then the # 2
>   level teachers and then the level # 1, lowest qualified
>   teachers were supposed to be called for the jobs.
>       16.    This procedure changed over time.
>   However, the D.O.E. has refused to provide us with
>   their new rules, procedures or regulations, forcing us
>   to file a Motion To Compel them to deliver these
>   relevant procedure documents to us, so that we can
>   prove they are violating them, or do not have them and
>   are discriminating against the Plaintiff in
>   assignments.

**Ex 1** the letter of Marty Mattison makes it clear however, that the initial assignment of tutors was routinely made at the School level.  And Ira Ilson and many other school counselors and principals had recommended Plaintiff for work for 16 years at that time.   Which certainly raises a substantial question of the material fact alleged by the Defendants that the Windward had Honolulu District offices routinely and always made the Home/Hospital teacher-student assignments rather than the school counselor, as Ira Ilson, Castle High School counselor and Marty Mattison, director of the tutoring program wrote in their letters.   Ex. 1 & 2.

Exhibits 1 and 2 totally refute, and certainly raise a reasonable doubt as to the Defendants Maeda and Gronna's pre-texts for discrimination against Mr. Sherez.    For Mr. Mattison

states that the way the Home/Hospital Tutor referral program actually went was the school made the initial referral, and only if the school did not, would the District assign a tutor from the pool.  Indeed, the Defendants argue, Castle V.P. Gronna's predecessor, did the job of assignments, but she did not.  While she admits, in her round about way that she "de-selected" Plaintiff for the tutoring job, counselor Ira Ilson, who know Plaintiff where Gronna did not, for this tutoring job.  So it is clear that Defendant Gronna took work away from the Plaintiff that she could have facilitated.  Given the policy of the school making the initial referral, as Mr. Ilson did, and then the District only filling the position by default when the school neglects to recommend a tutor.

The Defendant's declarations do not take the place of the actual procedures and polices the Defendants refused to produce.  And the jury will be able to deduce circumstantial evidence from the lack of documentation to refute Mr. Mattison's and Mr. Ilson's letters.   And the voluminous file of Plaintiff's teaching appointments, and recommendations over the years.

Those recommendations, scores of them are relevant to the Defendant's claim that a better qualified teacher was given the McKinley school for adult GED class teaching assignment.  The registrar, Mr. Won's letter refutes the Defendant's argument that enrollment declined.  And the Defendant's refused to produce the *GED* graduation records of the teacher who took Mr. Sherez place

to compare them.    Mr. Won the registrar knows that Plaintiff's success rate in preparing students for the GED was better than the night teacher's.

There was only a day class and a night class.  The records will show that Mr. Sherez had almost 100 students for his class and had to be moved into a larger room, and students were still enrolling when Mr. Sherez class were terminated.   Ex. 3.

Because Plaintiff had exceptional success with very difficult autistic and even violent boys and troubled girls, Ira Ilson, the Castle High counselor frequently recommended Plaintiff for tutoring jobs he thought through his experience with Plaintiff and knowledge of the students history would be decent matches for success.

Regarding Helen Sanpei's claims that she appointed a more qualified teacher for the one remaining GED class, Plaintiff's Juris Doctor degree, scores of excellent recommendations for this tutoring work over 20 years and exhibit 4, establish a material Question of fact.   Exhibit 4, means that Plaintiff scores exceptionally high on the PRAXIS test, the National teacher exam. Plaintiff has all of the qualifications to be a licensed teacher in Hawaii, having passed all of the class room work and tests with high marks.    However, in retaliation for filing this suit the Defendant D.O.E. has refused to place the Plaintiff is a Special Education teaching position, for which his (paid) participation in the Special Education Teacher program recently

qualifies him.  So that he has not been granted his certificate.

Nevertheless, Plaintiff passed the Praxis, and challenges the State to produce the qualifications and test scores on the GED test of his predecessor, to compare with his students scores. Which were of the highest percentage, which was why students were leaving the other night class to take his day class.  Ex. 3-4.

It is hoped that Plaintiff's description of his education and teaching experience in his declaration and Exhibits 2, 3 and 4 will establish to the court that Plaintiff has and can produce witnesses to vouch for the scores of recommendations from teachers, principals, and parents of students he has helped over the years.  So Plaintiff requests permission to supplement the record with documents relevant to Defendant's claim that they gave Plaintiff's old McKinley School for Adults GED class to a more qualified teacher.

> 17.    The Central District Home and Hospital division had Plaintiff tutor terminally ill students at Tripler hospital who were dying and military dependents.
> 18.    Plaintiff tutored some kids who were in the program for legal reasons as violent and incorrigible.  Not all students were in the program for medical reasons.  Plaintiff tutored Special Education/Special Services students during summers. But Mattison assigned cases in a discriminatory manner and lied about the Plaintiff working in the summer in an unemployment hearing.
> 19.    Def. Gronna Enforced a gender biased Teacher employment practice, which Marty Mattison told Plaintiff was the result of a recent law suit between a male tutor and a female student.  He also told Plaintiff that under the new rules an adult must be present for tutoring all students of all ages, not just students below High School age, as in the past.

Mattison told Plaintiff he could not get a copy of these "unwritten rules".

20. It included Students under court supervision prohibited from attending school or for other legal reasons.

21. One year the Special Education teacher @ Kalaheo High school, Mrs. Kealoha, was discovered not to be a certified teacher, she had a drug problem and was caught stealing from the school, teachers and students. The DOE called told me this when the District Office called me in to take over her class, which had not done any real educational work for the whole quarter.

22. Plaintiff had filed the paper work given to him to receive the same work assignments that he had been performing for years and for which he was well qualified. Plaintiff received a copy of the official appointment letter for that year. Exhibit 3 is a true copy of this document. This argument is a false pre-text for gender Discrimination by Ms. Gronna and the Windward Department.

23. Ira Ilson, the Castle High School counselor told Plaintiff that he submitted Plaintiff's name on the form to provide tutoring for this pregnant female student and that Sara Gronna told him that "males cannot tutor females; She remove his name." **Ex 2.** The next day I confronted Sara Gronna about not being allowed to tutor female students, as I had done before. At first she denied any gender restriction, but then she said "males cannot teach pregnant females."

24. And the previous year Sara Gronna had me removed from tutoring a female student of Castle Highs School who was living in a group home in Manoa. The official reason I was given was because I was a male. Although I was promised another job, one was not provided at that time to replace that assignment.

27. If the program was fair, Plaintiff would have been assigned to the female student, the Defendant's claim the Plaintiff's name was submitted to tutor by the school before it went into the rotational policy at district level. And Plaintiff has not been assigned a female student since this in over 2 years. And Ira Ilson, Sara Gronna and Marty Mattison all told him they were enforcing a gender biased employment policy.

28. Plaintiff was retaliated against for filing this complaint against Sara Gronna and Castle High School by being limiting his further work by the

Windward District.    Eliminating half of his possible tutoring students negatively affecting his income. And he has not been assigned another female student since he filed this complaint.

29.    Plaintiff was teaching Adult Education GED preparation at McKinley School for Adults in 2003, as he had for a year and half there for several courses.  In the spring my class was prematurely terminated by the principal disregarding the registrar's statement that the course would end right before the GED was to be given, thereby preventing the students from passing the exam, and costing me my job and reputation.

30.    Plaintiff, although vastly experienced and tremendously qualified is the only so qualified teacher enrolled in the D.O.E. Special Education Teacher Certification Program that has not been hired for a full time job.    Even though the State unemployment office rated his job search as excellent.

31.    Plaintiff has been informed that the reason he has not been hired for any of these and or other jobs is because he filed the instant original complaint of gender discrimination against the DOE. and Sara Gronna.

### GENUINE ISSUES OF MATERIAL FACTS ESTABLISHED

Based on Plaintiff's answers to Questions 1,2, 4, 5, 6, 11, 13, and 14, as well as 15, 16, 17 18, 19, 20, 21, 22, 23, 24 and 25, substantial issues of material fact has been raised which prevent summary judgment in this case.    <u>PEREZ v. CURCIO</u>, 841 F.2d 255 (9th Cir. 1988)

> Perez has also raised genuine issues of material fact concerning the possibility of pretext in her termination. The City's awareness that Perez had filed an age <discrimination complaint, the timing of the payroll investigation, the manner in which the investigation was performed, and contested issues of fact concerning the results of the investigation support Perez's argument that a jury could infer that the termination was in retaliation for filing a complaint rather than based on payroll irregularities.[fn1] Again, although Perez's case is weak, it presents an "elusive factual question" of

      intent inappropriate for summary judgment. <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1377 (9th Cir. 1987).
      In ruling on a summary judgment motion "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor." Id. at 2513. As long as Perez has introduced some evidence from which a jury could believe Perez's explanation rather than the City's explanation and material questions of fact exist, the case must go to a jury.   <u>PEREZ v. CURCIO</u>, 841 F.2d 255 (9th Cir. 1988)

While employment is generally held to be at will, in the absence of contract in Hawaii.   Two exceptions to this doctrine are recognized in Hawaii law.   First, "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy."  <u>Parnar v. Americana Hotels, Inc.</u>, 65 Haw. 370, 374, 652, P.2d 625, 627 (1982).

    <u>Kinoshita v. Canadian Pac. Airlines</u>, 68 Haw. 594, 724 P.2d 110 (1986) is the leading case on this issue in Hawaii. It states specifically, "if an employer [chooses] to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.'" <u>Kinoshita</u>, 724 P.2d at 117 (citation omitted)   <u>Parnar</u>, 65 Haw. at 380, 652 P. 2d at 631.   <u>Hoffman-LaRoche v. Campbell</u> 512 So 2d 725 (Ala. 1987).

Plaintiff has applied repeatedly since filing this complaint for Home Hospital Tutoring work and has been denied any work tutoring females and scant work tutoring males.

**Section 2000e-2. Unlawful employment practices**

   (a) Employer practices

   It shall be an unlawful employment practice for an employer

      (1) to <u>fail or refuse to hire</u> or to discharge any individual, or otherwise **to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment**, because of such individual's race, color, religion, sex, or national origin; or
      (2) <u>to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee</u>, because of such individual's race, color, religion, sex, or national origin

        As the Supreme Court stated in <u>Griggs vs. Duke Power Co.</u> 401 US supra @ 426, 91 S Ct at 851, 28 L Ed 2d @ 161 and quoted in <u>Rowe vs. General Motors Corp</u>. 457 F 2d 345 @ 355:
        "It is clearly not enough under Title VII that the procedures utilized by employers are fair in form.  These procedures must in fact be fair in operation.  Likewise, the intent of employers who utilize such discriminatory procedures is not controlling since "Congress directed the thrust of the Act to the **consequences** of employment practices, not simply the motivation."  <u>Griggs vs. Duke Power Co.</u> 401 US @ 432.

     "It is therefore clear that employment practices which operate to discriminate against people because of their race, color, religion, sex or national origin, violate Title VII, even though the practices are fair on their face and even though the employer had no subjective intention to discriminate."


     Employment practices which dream up a pre-text for

eliminating a qualified white male Home Hospital Tutor.   The

Defendants should have more control over the work environment

than to let that happen and buy into it.

     These facts are clear evidence Defendants assertions of

corporate restructuring are merely pre-texts for the court not to

allow a jury to examine the details of the Defendants actions.

RA 89-     Docket No. 43.     <u>NATIONAL RAILROAD PASSENGER</u>

CORPORATION v. MORGAN, 536 U.S. 101 (2002);   MATHEWSON v. ALOHA AIRLINES, INC., *82 Haw. 57* (1996) 919 P.2d 969.

And for which causes of action Plaintiff established a prima facie case, and sufficient evidence Defendants stated reasons were pre-texts for discrimination in a hostile work environment PAVON v. SWIFT TRANSP. CO., INC., *192 F.3d 902* (9th Cir. 1999); GOFF v. CONTINENTAL OIL CO., 78 F.2d 593  (5th Cir. 1982); MATHEWSON v. ALOHA AIRLINES, INC., *82 Haw. 57* (1996) 919 P.2d 969.

### 7.   PRIMAE FACIE CASE OF DISCRIMINATION ESTABLISHED

The ganging up of this "local" clique and "consensus" is a Nepotistic or racially biased conspiracy that actively operated against Mr. Sherez in several specific instances.    Bonilla v. Oakland Scavenger Co., 697 F 2d 1297 (1982).

The recent  NATIONAL RAILROAD PASSENGER CORPORATION v. MORGAN, 536 U.S. 101 (2002) & MORGAN v. NATIONAL R.R. PASSENGER, 300 F.3d 1144 (9th Cir. 2002) holds that Plaintiff can present both direct and circumstantial evidence to prove his case of illegal discrimination on the job, and that includes all of the evidence of an "illegal pattern or practice of harassment or of a "hostile work environment" on the job even though some of those facts may lie well outside the 300 day line.  If they are similar in kind or circumstance relevant to actions of harassment that occurred within the 300 day line, they are admissible at trial.

In <u>Morgan</u>, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," 122 S.Ct. at 2072, **while "a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful <employment> practice and at least one act falls within the time period,"**[fn6] id. at 2077. Abner J. Morgan, Jr., brought claims of disparate treatment, retaliation, and hostile work environment <racial> <harassment> against Amtrak, alleging inter alia that he was repeatedly denied training opportunities, subjected to unwarranted disciplinary action, and unlawfully discharged. <u>LYONS v. ENGLAND</u>, 00-55343 (9th Cir. 2002) Filed October 9, 2002.

The Plaintiff is entitled to present all of these related and interlocking facts of harassment and unfair treatment at the trial to present both the direct and the circumstantial evidence of discrimination in his case.

> At the initial stage of a case of disparate treatment, appropriate background evidence will be evidence, either direct or circumstantial, that, when combined with evidence of the employer's present conduct, "give[s] rise to an inference of unlawful discrimination." <u>Burdine</u>, 450 U.S. at 253.

> **We begin instead with the Court's statement in Evans that untimely evidence of the employer's discriminatory acts "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue."** 431 U.S. at 558 (emphasis added). "Relevant evidence" is defined by Rule 401 of the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In the context of a racial disparate treatment claim, admissible background evidence must be relevant to determine "the ultimate question: whether . . . `the defendant intentionally discriminated against [the plaintiff]' because of his race." <u>St. Mary's Honor Ctr. v. Hicks</u>, <u>509 U.S. 502</u>, 511 (1993) (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine,</u> <u>450 U.S. 248</u>, 253 (1981)).

> The district court will sometimes be required to

engage in Rule 403 balancing when determining the admissibility of evidence of time-barred acts, Fed.R.Evid. 403 (stating that otherwise relevant evidence may be excluded if its probative value is substantially outweighed by its potential for unfair prejudice or confusion of the issues), **bearing in mind that, in discrimination cases, probative evidence of wrongful intent will necessarily prejudice the defendant's case.**[fn13]   LYONS v. ENGLAND, 00-55343 (9th Cir. 2002) Filed October 9, 2002.

Hence, Plaintiff has the right to present all of the evidence of his mistreatment on the job to the jury to refute the Defendant's random rotation claims, which result in his near total lack of work, since he complained about Castle High School and Meredith Maeda and Sara Gronna's new gender discrimination policy.

As the Ninth Circuit Court of appeals ruled a decade ago in OFFICE OF HAWAI'IAN AFFAIRS v. DEPARTMENT OF EDUCATION, (Hawaii 1996) *951 F. Supp. 1484*

> Although the Eleventh Amendment prevents Plaintiffs from directly suing states and state agencies, the Eleventh Amendment does not bar suits against state officials for prospective injunctive relief.  Under this exception to the Eleventh Amendment recognized by the Supreme Court, a plaintiff may sue a state official to challenge the constitutionality of a state official's action by seeking prospective injunctive relief. *Pennhurst* West Page 1493 *State School & Hosp. v. Halderman,* 465 U.S. at 103-05, 104 S.Ct. at 910 (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).   This exception extends to suits against state officials for violations of federal statutory law. *Exxon Corp. v. Fischer,* 817 F.2d 1429 (9th Cir. 1987) (discussing supremacy clause).
>
> <u>If a plaintiff asks a federal court to enjoin an official's future unlawful conduct, the Eleventh Amendment presents no bar because actions by a state official in violation of the constitution or federal law cannot be authorized by a state</u>. *Id*. at 102-03, 104

S.Ct. at 908-910. As the Supreme Court stated in *Pennhurst,* "an official who acts unconstitutionally is `stripped of his official or representative character.'" *Id*. at 102, 104 S.Ct. at 910 (quoting *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. at 454). Emphasis added.

Mr. Sherez is in need of injunctive relief to return to work for which he is well qualified and has a record of some success.

In addition, the State of Hawaii Anti-employment discrimination act clearly makes individuals liable on it's face, the State of Hawaii Supreme Court has also so ruled.  SCHEFKE v. RELIABLE COLLECTION AGENCY, LTD., 96 Haw. 408 (2001)

> HRS § 378-2(2) and (3) provide in pertinent part that it is "an unlawful discriminatory practice: (2) [f]or any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual . . . has filed a complaint . . . in any proceeding respecting the discriminatory practices prohibited under this part" or "(3)
>
> Page 442 [f]or any person whether an employer, employee, or not, to aid, abet, incite, compel, or coerce the doing of any [such] practices . . . or to attempt to do so[.]" (Emphases added.) The terms "employer" and "person" are defined in HRS § 378-1
>
> (1993) as follows:

In <u>TRITCHLER v. COUNTY OF LAKE</u>, 358 F.3d 1150 (9th Cir. 2004) the Ninth Circuit Court of Appeals re-iterated as recently as February 18, 2004, that all State's have waived and are subject to the jurisdiction of the Federal Courts under Title VII, as well as Title VI, 42 U.S.C. 2000(e) and (d), as well as Title IX.

### *2.  **State of Hawaii Employees are not immune from suit for discriminatory  actions they commit on the job.***

**Hawai`i Revised Statutes (HRS) Chapter 662, the State Tort Liability Act,**

sets out the parameters under which the State of Hawai`i waives its sovereign immunity from suit. HRS §§ 662-2 (1993) provides that "[t]he State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." HRS §§ 662-15(1) (1993) provides that there is an exception to this waiver for

[a]ny claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the <u>exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused</u>[.]   HRS §§ 662-2.

Intentional illegal discriminatory actions have never been exempt from redress under the Hawaii State Tort Liability Act. **And malfeasance in conducting official investigations by a State Agency are indeed actionable under State law**.   <u>TSEU, v. JEYTE</u> NO. 20489;   APPEAL FROM FIRST CIRCUIT COURT (CIV. NO. 94-1553) JUNE 30, 1998.    Thus the employee defendants are not immune from suit for State of Federal civil rights violations or intentional torts.

Hence, the District Court is correct in exercising it's supplemental jurisdiction in this case and not creating more litigations expenses for both sides by splitting the case in two.

*42 U.S.C. §§ 1981.*    **Equal rights under the law**

    (a) Statement of equal rights.

        All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law. (R.S. Sec. 1977; Pub.L. 102-166, title I, Sec. 101, Nov. 21, 1991, 105 Stat. 1071.) CODIFICATION R.S. Sec. 1977 derived from act May 31, 1870, ch. 114, Sec. 16, 16 Stat. 144. Section was formerly classified to section 41 of Title 8, Aliens and Nationality. AMENDMENTS 1991 - Pub.L. 102-166 designated existing provisions as subsec. (a) and added subsecs. (b) and (c).

    The court in Kolstad v. American Dental Association ruled that an employer's conduct need not be "egregious" to satisfy the law's requirement for punitive damages. Once a worker has successfully made a case that a company intentionally discriminated, the worker can win punitive damages if it can be shown that the employer acted "with malice or with reckless indifference," focusing on the state of mind of the supervisor. KOLSTAD v. AMERICAN DENTAL ASSN., 527 U.S. 526 (1999)    In

this case in systematic discrimination against African-American male students was alleged and can be proven. Given the State of Hawaii commandment of non-discrimination in Article X Section 1, and Title VI, the defendants cannot say they were unaware of their obligation to craft non-discriminatory D.O. E. employment standards.

The Defendants should know that maintaining a discriminatory hiring policy violated Article X, Section 1 of the State Constitution and Title VI for Federal programs, as well as 42 U.S.C. 1981, 42 U.S.C. 1982, 42 U.S.C. 1983, 42 U.S.C. 1985 and 42 U.S.C. 1986 and Title VII.

**3.**

Under 12(c) FRCP, a defendants Motion to Dismiss on the pleadings can only be granted when there is no facts at all submitted, which taken as to be true, state a cause of action. This is a very high standard and complaints are rarely dismissed by the Courts. "A complaint should no be dismissed for failure to state a claim unless it appears beyond doubt that no relief can be granted under any set of facts that can be proved in support of its allegation". See Makanui v. DOE, 6 Haw. App. 397 (1986). Courts generally disfavor dismissing complaints before discovery and a presentation of the facts provided are allowed. Pleadings should be construed liberally in a motion to dismiss for failure to state a claim she rather be granted. See

Bertleman v. Taas Association,   69 Haw. 95 (1989) .

In this case, Plaintiff has requested and the Defendants have refused to produce DOE employment records with would show the utilization of an illegal gender bias in Home Hospital tutoring assignments and jobs for female students.    This policy was stated to Plaintiff to be the "unwritten" DOE policy by Defendant Sara Gronna and Ira Ilson and Marty Mattison and others.

Since it is an unwritten policy, only by examining the actual employment contracts of the Home Hospital Tutors employed by the Windward District since 2002 can Plaintiff's statement be corroborated.   Consequently these clearly relevant records should be examined before the court rules that Plaintiff can prove not set of facts or state no case which a jury could rule in his favor.

Because once we receive the requested relevant documents, the Defendant refuses so far to deliver, which is the subject of Plaintiff's Motion To Compel Production set for August 26, 2005.

For dismissal, a claim must be absolutely without merit to be granted.  See Rosa v. CWJ Contractors, 4 Haw. App. 210 (1983).  In reviewing a motion to dismiss under Rule 12(b)(6) the court will deemed all allegations contained in the complaint as true.  See Au v. Au, 63 Haw. 210 (1981)  Midkiff  v. Castle & Cooke, Inc., 45 Haw. 409 (1962).   The court should review the complaint

in the light most favorable to the plaintiff in order to determine whether the allegations contained could warrant relief under any alternative theory. Touchette v. Ganal, 82 Haw.293 (1996).

Sara Gronna, as distinct from Defendant State of Hawaii Department of Education and Sara Gronna in her official capacity, can be held individually liable under Federal and State law is for common law tort violations in Federal Court, and Federal Civil Rights violation over which the Federal law confers original jurisdiction in Federal court and comity jurisdiction of State tort claims arising out of the same facts.

A plaintiff may sue a state official to challenge the constitutionality of a state official's action by seeking prospective injunctive relief. Pennhurst West Page 1493 State School & Hosp. v. Halderman, 465 U.S. at 103-05, 104 S.Ct. at 910 (citing Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). This exception extends to suits against state officials for violations of federal statutory law. *Exxon Corp. v. Fischer,* 817 F.2d 1429 (9th Cir. 1987) OFFICE OF HAWAI'IAN AFFAIRS v. DEPARTMENT OF EDUCATION, (Hawaii 1996) 951 F. Supp. 1484

This    27th        day of July 2005.

/S/ Andre' S. Wooten
ANDRE' S. WOOTEN

```
                                        ATTORNEY FOR PLAINTIFF
                                           ROBERT SHEREZ
```