MARK J. BENNETT                 2672
Attorney General of Hawai'i

JAMES E. HALVORSON              5457
NELSON Y. NABETA                3004
Deputy Attorneys General
Department of the Attorney
   General,   State of Hawai'i
235 South Beretania Street, 15th Floor
Honolulu, Hawai'i 96813
Telephone: (808) 587-2900
Facsimile: (808) 587-2965
E-Mail: Mark.J.Bennett@Hawai'i.gov
        James.E.Halvorson@Hawai'i.gov
        Nelson.Y.Nabeta@Hawai'i.gov
Attorneys for Defendants
STATE OF HAWAI'I,
DEPARTMENT OF EDUCATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ROBERT SHEREZ,<br><br>    Plaintiff,<br>vs.<br><br>STATE OF HAWAI'I DEPARTMENT OF EDUCATION; PATRICIA HAMAMOTO, Superintendent of Hawai'i Schools, MEREDETH MAEDA, Principal, Castle High School; SARA GRONNER OR GRONNA, Vice Principal of Castle High School,<br><br>    Defendants. | CIVIL NO. 04-00390 JMS-KSC<br><br>DEFENDANT STATE OF HAWAI'I'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; DECLARATION OF BEVERLY REIDY; CERTIFICATE OF SERVICE<br><br>Date:  February 12, 2007<br>Time:  10:00 a.m.<br>Judge: J. Michael Seabright |

222268_1.DOC

DEFENDANT SATE OF HAWAI'I'S REPLY TO PLAINTIFF'S
MEMORANDUM IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

I.  THE PLAINTIFF'S OPPOSITION FAILS TO PRESENT ANY TRIABLE ISSUE OF FACT CONCERNING WHETHER THERE IS A PRIMA FACIE CASE OF GENDER DISCRIMINATION OR RETALIATION

A.  Regarding Gender Discrimination

On December 21, 2005, the Plaintiff filed his Second Amended Complaint (hereinafter "Complaint"). The Complaint alleges that the Plaintiff worked for the Department of Education as a part time tutor for the Home-Hospital Instructional Services program, from 1989 to 2005, in both the Windward and Honolulu Districts of Oahu. Complaint, ¶¶ 1, 4, 5 and 25.

The Complaint states that Martin Mattison was the supervisor of the Home-Hospital Instructional Services program for the Windward District. In 2003, Mr. Mattison informed the Plaintiff of new rules, apparently adopted by the Home-Hospital Instructional Services program that were "unwritten". The Complaint stated that Mr. Mattison explained that this policy prohibited the assignment of male teachers as tutors from female students. Complaint, ¶¶ 19, 25.

On December 18, 2006, the State of Hawai'i, Department of Education filed motion for summary judgment. The motion was supported by declarations by Martin Mattison, Beverly Reidy and Pauline Kokubun, the educational specialists who supervised the Home-Hospital Instructional Services program in the

Windward and Honolulu Districts for the Department of Education. These specialists stated that the program never had a policy that prohibited the assignment of a male teacher to serve as a tutor for a female student. Declarations in support of summary judgment: Declaration of Martin Mattson, ¶ 2; Declaration of Beverly Reidy, ¶ 5; Declaration of Pauline Kokubun, ¶ 4. Yet, the Plaintiff maintains his belief in the purportedly "unwritten" policy based on his personal experience. Opposition, p. 7. Thus, he believes that he had not been assigned to tutor a female student because of the enforcement of this "unwritten" policy. However, the Plaintiff ignores the experience of other male teachers in the same program. Over the years, other male teachers, in the same program and of the same district, have been assigned to serve as tutors for female students. Declaration of Beverly Reidy, in support of this Reply memorandum, ¶¶ 4-5.

Yet, in spite of this, the Plaintiff's opposition argues that there is direct evidence of the purportedly "unwritten" policy in the form of hearsay statements of Defendant Sarah Gronna, Martin Mattison, and a school counselor named Ira Ilson. Declaration of the Plaintiff, ¶ 23. However, even if the hearsay statements were actually made, such statements do not provide direct evidence that a jury could consider as to this purportedly "unwritten" policy.

Courts have held that direct evidence of discrimination may include action or remarks of an employer that reflect a discriminatory attitude. <u>Beshears v.</u>

Asbill, 930 F.2d 1348, 1354 (8th Cir.1991). However, direct evidence does not include "stray remarks" in the workplace, statements by decision-makers unrelated to the decisional process itself, or statements by non-decision makers. Hallahan v. The Courier Jounal, 138 S.W.3d 699 (Ky. 2004); Crock v. Sears, Roebuck & Co., 261 F.Supp.2d 1101, 1114 (S.D.Iowa 2003). In particular, courts have held that statements by an individual without authority over the employment action at issue are not considered direct evidence of discrimination. Martin v. Kroger Co., 65 F. Supp. 2d 516, 548-50 (S.D.Tex. 1999); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996); Reynolds v. Glynn County Board of Education, 968 F.Supp. 696, 703 (S.D.Ga 1996); Stone v. Galaxy Carpet Mills, Inc., 841 F.Supp. 1181, 1185 (N.D.Ga. 1993). Consequently, courts have held that evidence consisting of "stay remarks" will not preclude summary judgment. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.1990), and Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir.1993).

In this case, the statements purportedly made by Defendant Gronna, Mr. Mattison, and Mr. Ilson are not admissible direct evidence of the discriminatory policy because the statements were supposedly made by persons who lacked the authority to establish the purported policy. Under the statute, none of the individuals would have had the authority to establish this policy. The authority to establish policies governing the duties and qualifications of tutors in the Home-

Hospital Instructional Services program is held by the Board of Education. Declaration of Beverly Reidy, in support of summary judgment, ¶ 5. The statute provides:

> School personnel engaged in instructional work, other than teachers and educational officers.
>
> (a) The board of education shall appoint teaching assistants, educational assistants, bilingual/bicultural school-home assistants, school psychologists, psychological examiners, speech pathologists, athletic health care trainers, alternative school work/study assistants, alternative school educational/supportive services specialists, and alternative school project coordinators as may be required to carry out the purposes of this chapter. **The board**, in consultation with the department of human resources development, **shall prescribe the duties and qualifications for positions**, adopt classification systems, classify and fix the compensation of positions accordingly, provide a classification appeals procedure, and establish probationary and other requirements for tenure that protects employees from being disciplined without proper cause.
> [Emphasis added]

§ 302A-633.5, Haw.Rev.Stat.

In this case, the Plaintiff's opposition fails to provide any evidence that the Board of Education had established any policy relevant to the duties and qualifications of tutors of the program that can be interpreted to prohibit male tutors teaching female students. Instead, it is undisputed that the Board did not establish such a policy. Declaration of Beverly Reidy, in support of summary judgment, ¶ 5:

> 5. This program has never had a policy that prohibited the assignment of a male teacher to serve as a tutor for a female student. Furthermore, an educational assistant would not have the authority to establish such a policy because it would substantially change the duties and qualifications of persons serving as tutors. Authority to make such changes is held by the Board of Education. **The Board has never established a policy that prohibited the assignment of a male teacher to serve as a tutor for a female student.**
> [Emphasis Added]

Consequently, even if Defendant Gronna, Mr. Mattison, and Mr. Ilson had made the remarks, such remarks are not direct evidence of the existence of the purported policy. Furthermore, the case law indicates that the mere existence of statements does not allow the Plaintiff to justifiably rely upon them. Courts have consistently held that a plaintiff does not have the right to rely upon statements that are contrary to the statutory authority granted to a school board. Brown v. Caldwell School District No. 132, 898 P.2d 43, 49 (Idaho 1995). Therefore, where statements have been made that are contrary to the statutory grant of authority, a plaintiff does not have the right to justifiably rely upon such remarks. Daniel v. University of Cincinnati, 761 N.E.2d 1168, 1172 (Ohio 2001). As such, the existence of the purportedly "stray remarks" by Defendant Gronna, Mr. Mattison and Mr. Ilson are insufficient to preclude summary judgment.

B.  Regarding Retaliation

The Complaint also alleges that the Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission based on gender

discrimination. After the Plaintiff filed his charge, the Complaint states that the Plaintiff was terminated as a teacher at the McKinley Community School for Adults. Complaint, ¶¶ 12-13, 26.

The motion for summary judgment filed by the Department of Education is supported by Declaration of Helen Sanpei, principal of the McKinley Community School for Adults. Ms. Sanpei stated that the Plaintiff was hired to teach a GED class in the fall semester of 2002 and the spring semester of 2003. Declaration of Helen Sanpei, in support of summary judgment, ¶ 5. Near the end of the spring semester of 2003, the Plaintiff was notified that he would not be needed to teach the course during the succeeding semester. Declaration of Helen Sanpei, in support of summary judgment, ¶ 6. The Plaintiff completed teaching the GED class in the spring semester of 2003. Declaration of Helen Sanpei, in support of summary judgment, ¶ 7. The Plaintiff was not hired to teach the succeeding semester because the smaller student enrollment would support only one class. Declaration of Helen Sanpei, in support of summary judgment, ¶ 6.

The Plaintiff's opposition argues that he was told the reason that he was not hired to teach another semester at the McKinley Community School for Adults because he filed a gender discrimination complaint against the Department of Education. Declaration of the Plaintiff, ¶ 31. However, the hearsay statements presented by the Plaintiff are insufficient to preclude summary judgment.

Courts have held that once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Walker v. SBC Services, Inc., 375 F.Supp.2d 524, 535 (N.D.Tex. 2005). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir.1996). Likewise, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). Similarly, hearsay evidence, unless it falls within a recognized exception, is not competent summary judgment evidence. Fowler v. Smith, 68 F.3d 124, 126 (5th Cir.1995). As such, inadmissible hearsay cannot be considered on a motion for summary judgment. Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir.1999). In particular, courts have precluded the use of inadmissible hearsay testimony in opposition to a motion for summary judgment. Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir.1995). In addition, assertions of "upon information and belief" are also not sufficient to defeat summary judgment. Pace v. Capobianco, 283 F.3d 1275, 1278 (11th Cir.2002).

In this case, the Plaintiff's opposition to the Department of Education's motion for summary judgment contains vague references to hearsay statements

from which the Plaintiff concluded that he was not hired to teach another semester at the McKinley Community School for Adults because he filed the present discrimination complaint. The Plaintiff provides no information to lead the Court to believe that the statements are admissible. Consequently, the Plaintiff has failed to present any competent evidence to oppose summary judgment.

However, the Plaintiff will argue that the reason he was not hired to teach in the subsequent semester was in retaliation for his filing his charge of discrimination, based on the late submittal of an affidavit by Ms. Dagmar Suzuki. However, the statement contained in this affidavit is insufficient to show retaliatory motivation on the part of the principal of the McKinley Community School for Adults. First, the affidavit contains double hearsay and lacks any foundational information for the Court to determine whether any hearsay exceptions apply. Second, the double hearsay statement is ambiguous in terms of the subject matter to which it refers: "I heard it (FIRED) was because of a Sexual Lawsuit." It is not clear from the wording used by Ms. Suzuki that the statement she overheard actually referred to the principal's decision not to hire the Plaintiff to teach another semester at the school. Finally, even if the double hearsay statement is admissible and refers to the decision, the statement amounts to a "stray remark" by a person who is not the decision maker concerning the issue presented for this case. Furthermore, there is no indication from the affidavit that the any of the

declarants were speaking for the principal who was the only person authorized to hire the Plaintiff as a teacher at the school. Declaration of Helen Sanpei, in support of summary judgment, ¶ 2. Consequently, the double hearsay statement contained in the affidavit of Ms. Suzuki, fails to present any competent evidence to oppose summary judgment.

II. THE PLAINTIFF'S OPPOSITION FAILS TO PRESENT ANY TRIABLE ISSUE OF FACT CONCERNING WHETHER THE NON-DISCRIMINATORY EXPLANATIONS OF THE EMPLOYER WERE PRETEXTUAL

A. Regarding Gender Discrimination

The Plaintiff argues that the method of assignment of tutors is a pretext for the existence of an "unwritten" policy that prohibits male teachers from serving as tutors for female students. Opposition, pp. 3-4. The Plaintiff asserts that the fact that schools are allowed to select specific tutors they wish to be assigned to a student is somehow evidence that the non-discriminatory explanation is a façade that hides the existence of the purportedly "unwritten" gender discriminatory policy. The Plaintiff points to the correspondence of Martin Mattison dated February 8, 2006, that states "the schools have recommended and assigned tutors for their students." Exhibit 1, in support of the opposition. However, the letter by Mr. Mattison does not show that the non-discriminatory explanation of how tutors are assigned is a pretext.

First, Mr. Mattison's correspondence is not relevant to the Plaintiff's argument of pretext since it is undisputed that other male teachers have been assigned to tutor female students. Declaration of Beverly Reidy, in support of this memorandum, ¶¶ 4-5. Whether the school is authorized to select the tutor or the assignment is made by other means is not relevant to the issue of pretext because the assignment of male tutors to female students would be impossible if there was a gender discriminatory policy in place as the Plaintiff believes. Consequently, the correspondence of Mr. Mattison is not probative of the actual existence of the purported policy.

Second, Mr. Mattison's correspondence does not establish that the non-discriminatory explanation given was false. A review of the correspondence shows that the statements made within the letter are entirely consistent with the statements made in the declarations in support of summary judgment. Mr. Mattison's declaration in support of summary judgment stated that in July 2002, the Home Hospital Instructional Services program began to institute new procedures for the assignment of tutors. The new procedures authorized the schools to select qualified tutors. However, for since the new procedures were to be first implemented during the 2002-2003 school year, the district office would retain the authority to select tutors for that year. Declaration of Martin Mattison, in support of summary judgment, ¶¶ 3-4. Defendant Gronna also corroborated the

statements of Martin Mattison. Declaration of Sarah Gronna, in support of summary judgment, ¶¶ 4-6. The consistency between the declarations in support of summary judgment and the Mr. Mattison's letter dated February 8, 2006, does not support the Plaintiff's assertion that the non-discriminatory explanation was a façade to hide the purportedly "unwritten" policy.

B.   Regarding Retaliation

The Plaintiff argues that evidence of strong student enrollment shows that the reason given by the principal of the McKinley Community School for Adults as to why the Plaintiff was not hired to teach a subsequent semester was false. The Plaintiff argues that a letter written by a Mr. Won dated February 18, 2005, refutes the decline in student enrollment for the semester following the spring semester of 2003. Opposition, p. 4 and Exhibit 3, in support of the opposition. However, this argument is not supported any evidence that the non-discriminatory explanation given by the principal was a pretext for retaliation.

The letter by Mr. Won does not give any basis to infer the level of enrollment for the relevant semester. The one page letter purportedly signed by a Mr. Won, merely comments on the number of students that attended the Plaintiff's class during the time he was hired to teach at the McKinley Community School for Adults. It does not comment on either the projected or actual student enrollment for other classes or other semesters. This lack of information as to the relevant

levels of student enrollment cannot be used to infer that the principal's explanation was a pretext for a retaliatory motivation. Consequently, the Plaintiff failed to present any evidence that the reason given why he was not hired to teach a subsequent semester was false.

Date: Honolulu, Hawaii, February 1, 2007.

                                                  NELSON Y. NABETA
                                                  Deputy Attorney General
                                                  Attorney for Defendants