IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBERT SHEREZ, ) | CIVIL. NO. 04-00390 JMS/KSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER GRANTING IN PART AND |
| ) | DENYING IN PART DEFENDANTS' |
| STATE OF HAWAII ) | MOTIONS FOR SUMMARY |
| DEPARTMENT OF EDUCATION; ) | JUDGMENT |
| PATRICIA HAMAMOTO, ) | |
| Superintendent of Hawaii Schools; ) | |
| MEREDITH MAEDA, Principal, ) | |
| Castle High School; SARA ) | |
| GRONNER OR GRONNA, Vice ) | |
| Principal of Castle High School, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

On December 18, 2006, Defendants filed two separate motions for summary judgment against Plaintiff Robert Sherez ("Sherez" or "Plaintiff"). The State of Hawaii, Department of Education ("DOE" or "State") seeks summary judgment in its favor and on behalf of the individually named Defendants in their official capacities with respect to Counts 1, 2, and 8 of Plaintiff's Second Amended Complaint ("State Defendants' motion"). Defendants Meredith Maeda

("Maeda") and Sarah Gronna ("Gronna"), in their individual capacities, seek summary judgment on Counts 4, 5, and 6 ("Individual Capacity Defendants' motion").  Sherez worked for the DOE as a part-time tutor for the Home-Hospital Instructional Services program and sued the State and Individual Capacity Defendants in 2004, alleging that they prevented male tutors from tutoring female students.  Based on the following, the court DENIES the State Defendants' motion and GRANTS in part and DENIES in part the Individual Capacity Defendants' motion.

## II.  <u>BACKGROUND</u>

**A.     Factual Background**

From 1989 to 2005, Plaintiff Sherez was a part-time tutor with the DOE's Windward Oahu District Home-Hospital Instruction tutoring program. The program provides instruction to students who were not able to attend school for medical reasons.  Defendant Maeda was the principal and Defendant Gronna was a vice principal at Castle High School in the Windward Oahu District ("Castle").  Sherez alleges that Gronna was in charge of the program at Castle and that she enforced a sexually discriminatory policy because he was prohibited from tutoring female students.

The parties dispute how tutoring jobs were assigned in the program. The DOE maintains that the program assigns tutors on a rotating basis, allowing all available tutors to obtain assignments on a fair basis, in order to maintain the number of teachers in the pool of qualified tutors. Reidy Decl. at ¶ 4. According to Marty Mattison (a DOE educational specialist who supervised the Home-Hospital Instruction program in the Windward District until April 2006), in July 2002, the Home-Hospital Instructional program instituted new procedures for the assignment of tutors; the program's new forms authorized the schools to select the tutor. Mattison Decl. at ¶ 3. However, during the 2002-2003 school year, Mattison advised the schools in the Windward Oahu District (including Castle), that the Home-Hospital Instructional Services program would retain the sole authority to select and assign tutors. *Id.*

Sherez, on the other hand, claims that Gronna, "removed his name" from a form that would have assigned him to tutor a pregnant female student. Sherez Decl. at ¶ 23. Sherez says that when he confronted Gronna "about not being allowed to tutor female students . . . she said 'males cannot teach females.'"[1] Sherez Decl. at ¶ 23. For her part, Gronna stated that the tutoring application for

---

[1] It is not clear when any of this took place; it appears to have occurred sometime during the 2001-2002 or 2002-2003 school year, which is when Gronna was a vice principal at Castle.

the pregnant female student was "outdated," had several incorrect entries, and that the counselor who gave her the form had written Sherez's name in the space for "Name of Tutor."  Gronna Decl. at ¶ 5.  Gronna then "forwarded a completed, correct application form to the program in order for the program to select the tutor. At no time, did [she] select any particular individual to serve as the tutor for this female student."  Gronna Decl. at ¶ 6.  Further, Gronna "did not make any selection of tutors for the home instruction of students during the 2002-2003 school year, under the Home-Hospital Instructional Services program."  Gronna Decl. at ¶ 7.

According to Sherez, Mattison told him that the tutoring assignment practice "was the result of a recent law suit [sic] between a male tutor/HDOE and a female student.  He also told Plaintiff that under the new rules an adult must be present for tutoring all students of all ages, not just students below High School age, as in the past.  Mattison told Plaintiff he could not get a copy of these 'unwritten rules.'"  Sherez Decl. at ¶ 19.  Sherez also claims Mattison "assigned cases in a discriminatory manner and purged [sic] himself about the Plaintiff working in the summer in an unemployment hearing."  Sherez Decl. at ¶ 18.

At some point, Sherez filed a complaint with the Hawaii Civil Rights Commission ("HCRC").  As a result, Sherez alleges that he suffered retaliation in

his employment.  He claims that his work in the Windward District has been limited, that he has not been assigned another female student since he filed his federal complaint, and that he has not been hired for a full-time job as a DOE Special Education Teacher.  Sherez Decl. at ¶¶ 28, 30.  He also alleges that he was "prematurely terminated" from his position teaching a GED course at the McKinley School for Adults in spring 2003.  Sherez Decl. at ¶ 29.  The DOE asserts that Sherez was not terminated by the McKinley School for Adults, but that he was not rehired for the following semester because of a drop in enrollment and because Helen Sanpai, the Principal, hired a "more qualified" teacher.  Sanpei Decl. at ¶ 4-5.  Sherez alleges that the reason he has not been hired for any of these jobs is because he filed a gender discrimination complaint against Defendants.

**B.     Procedural Background**

On December 21, 2005, Sherez filed his Second Amended Complaint, alleging the following Counts against the State and Maeda and Gronna:

1.  Violation of Title IX;
2.  Violation of Title IX Deliberate Indifference;
3.  Intentional Infliction of Emotional Distress ("IIED");
4.  Violation of 42 U.S.C. § 1985;
5.  Violation of 42 U.S.C. § 1986;
6.  Violation of 42 U.S.C. § 1983;
7.  Violation of Hawaii Revised Statutes ("HRS") Chapters 368 & 378; and
8.  Violation of Title VII.

5

Sherez seeks (1) a judicial declaration that the defendants violated state and federal law; (2) an injunction prohibiting defendants' "illegal practice of gender discrimination, retaliation and harassment" in hiring teachers; (3) damages in the amount of $10,000,000; and (4) attorney's fees and costs.

On January 22, 2007, the parties submitted a stipulation (Doc. No. 129) dismissing with prejudice the following Counts alleged in the Second Amended Complaint:  Counts 3 (IIED); 4 (§ 1985); 5 (§ 1986); 6 (§ 1983); and 7 (HRS Chapters 368 & 378) as to the State Defendants and Counts 1 (Title IX); 3 (IIED); and 8 (Title VII) as to Individual Capacity Defendants Maeda and Gronna.[2]  The remaining claims against the State Defendants are Counts 1 (Title IX); 2 (Title IX Deliberate Indifference); and 8 (Title VII).  The claims remaining against the Individual Capacity Defendants are Counts 4 (§ 1985); 5 (§ 1986); 6 (§ 1983); and 7 (HRS Chapters 368 & 378); as well as Count 2 (Title IX Deliberate Indifference).[3]

---

[2] Plaintiff's Second Amended Complaint inexplicably re-alleged these causes of action after the court had dismissed them by Order dated September 1, 2005.  (Doc. No. 61.)  At the December 7, 2006 status conference, the court instructed the parties to work on a stipulation regarding matters raised in Plaintiff's Second Amended Complaint that had already been ruled on in the September 1, 2005 Order.

[3] At the hearing, the parties acknowledged that Count 2 should have been included in the stipulation to dismiss entered on January 22, 2007.  The parties agreed that Title IX does not apply to individual capacity officials; instead, Title IX is directed at institutional recipients of federal financial assistance and applies only to those grantees.  *See* 20 U.S.C. 1681(a) (prohibits

(continued...)

On December 18, 2006, the State Defendants filed their motion for summary judgment on Counts 1 (Title IX); 2 (Title IX Deliberate Indifference); and 8 (Title VII); while the Individual Capacity Defendants moved for summary judgment as to Counts 4 (§ 1985); 5 (§ 1986); and 6 (§ 1983); and have asked the court to decline to exercise supplemental jurisdiction over Sherez's remaining state law claims in Count 7 (HRS Chapters 368 & 378).  On January 26, 2007, Sherez filed his opposition to the motion.[4]  The State and Individual Capacity Defendants replied on February 1, 2007.  A hearing was held on February 12, 2007.  Based on the following, the court DENIES the State Defendants' motion and GRANTS in part and DENIES in part Maeda and Gronna's motion.

---

[3](...continued)

sex discrimination at "any education program or activity receiving Federal financial assistance"). The court GRANTS summary judgment to the Individual Capacity Defendants as to Count 2.

[4] Sherez filed a "Memorandum in Opposition to Defendant State Department of Education and Meredith Maeda and Sara Gronna's Motions for Summary Judgment" (Doc. No. 130), and two separate concise counter-statements of fact: "Plaintiff's Concise Counter-Statement of Facts in Opposition to the Defendants State of Hawaii's Motion for Summary Judgment & Counter-Motion for Summary Judgment" and "Plaintiff's Concise Counter-Statement of Facts in Opposition to the Defendants Meredith Maeda and Sara Gronna's Motion for Summary Judgment & Counter-Motion for Summary Judgment."  (Doc. Nos. 131, 132.) Sherez's only attempt to file Counter-Motions for Summary Judgment appears to be in the title headings on the first pages of his Concise Counter-Statements of Fact; he provides no argument or facts in support of such a request.  To the extent he seeks relief under his purported "Counter-Motions for Summary Judgment," the court DENIES such relief as there are genuine issues of material fact that preclude summary judgment.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

### IV.  <u>ANALYSIS</u>

**A.  State Defendants' Motion for Summary Judgment**

    ***1.  Count 8:  Title VII (Gender Discrimination)***

Sherez alleges that the DOE's "practice of gender discrimination" in tutoring assignments violates Title VII.  Second Amended Complaint at ¶ 42.

a.    *Legal framework*

Title VII of the Civil Rights Act of 1964 forbids employment

discrimination against "any individual" based on that individual's "race, color,

religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Under the burden-

shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

plaintiff must first establish a prima facie case by offering proof:

> (1) that the plaintiff belongs to a class of persons protected by
> Title VII; (2) that the plaintiff performed his or her job
> satisfactorily; (3) that the plaintiff suffered an adverse
> employment action; and (4) that the plaintiff's employer treated
> the plaintiff differently than a similarly situated employee who
> does not belong to the same protected class as the plaintiff.

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

"The requisite degree of proof necessary to establish a prima facie case for Title

VII . . . on summary judgment is minimal and does not even need to rise to the

level of a preponderance of the evidence."  *Cordova v. State Farm Ins. Cos.*, 124

F.3d 1145, 1148 (9th Cir. 1997).  Establishing a prima facie case "creates a

presumption" that the plaintiff's employer undertook the challenged employment

action because of the plaintiff's gender or race.  *Cornwell*, 439 F.3d at 1028.

Defendants, to rebut this presumption, "must produce admissible evidence

showing that the defendant undertook the challenged employment action for a

'legitimate, nondiscriminatory reason.'" *Id.* (*Quoting McDonnell Douglas Corp.*, 411 U.S. at 802.)

If the defendant does so, the burden shifts to the plaintiff to show that the given reason is merely pretext for a discriminatory motive. *Id.* "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). The plaintiff can make either showing through direct or circumstantial evidence of discrimination. *Coghlan v. American Seafoods Co., LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* Circumstantial evidence requires an additional inferential step to demonstrate discrimination. *Id.* In order to survive summary judgment, the circumstantial evidence offered by the plaintiff "must be 'specific and substantial' to defeat the employer's motion for summary judgment."[5] *Id.* (citation omitted); *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005); *Bodett v. CoxCom, Inc.*,

---

[5] As this court has previously discussed, there is uncertainty regarding the circumstantial evidence a Title VII plaintiff must set forth to show pretext. *See Kim v. Potter*, 460 F. Supp. 2d 1194, 1205-06 (D. Haw. 2006). Although a three-member panel of the Ninth Circuit has questioned whether a "specific and substantial" showing is required, it has not overruled the applicability of this standard. *See Cornwell*, 439 F.3d at 130-31. The court applies the "specific and substantial" standard to the present matter.

366 F.3d 736, 743 (9th Cir. 2004). The plaintiff needs to do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle Broad. Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir. 1986).

> b.     *Gender discrimination claims*

Sherez alleges that the Defendants illegally discriminated against him on the basis of his gender by not allowing males to tutor female students. Defendants claim that there was no policy of gender discrimination in tutoring assignments.

> i.     Prima facie showing

Plaintiff has established a prima facie case of gender discrimination. The evidence, when viewed in the light most favorable to Sherez, shows that he satisfactorily performed his job as a tutor, but was denied tutoring assignments for female students because he was male, while female tutors were not prohibited from tutoring female or male students.

The State Defendants argue that Sherez has not made a prima facie showing because only the State Board of Education can establish policies with respect to tutors (*see* HRS § 302A-633.5), and no tutoring policy was ever implemented by the Board. *See* Mattison Decl. at ¶ 2; Reidy Decl. at ¶ 5; Kokubun Decl. at ¶ 5. Defendants' argument misses the mark. Sherez has not

alleged that the DOE implemented a *formal* policy precluding male tutors from

tutoring female students.  Instead, he alleges he was denied tutoring jobs "in a

manner which is evidence of a pattern and practice of gender discrimination[,]"

and that his rights were violated "by Defendants' illegal practice of gender

discrimination[.]" Second Amended Complaint at ¶¶ 1, 42.  Although at times the

Second Amended Complaint references a "gender discrimination policy," *see e.g.*,

¶ 25, it clearly articulates a theory of disparate treatment based on a practice and

unwritten policy barring male tutors from tutoring female students.  Thus, the

court rejects the State Defendants' claim that the lack of a formal tutoring policy is

fatal to Sherez's case.[6]

   Viewed in the correct context, Sherez's claim that he has been denied

jobs tutoring females, coupled with Mattison's statement that the new "unwritten

rules" were the result of a lawsuit and Gronna's statement that "males cannot teach

females" establishes that he was treated differently than similarly situated female

tutors.  Sherez has set forth the minimal degree of proof necessary to establish a

prima facie case for Title VII.  *See Cordova*, 124 F.3d at 1148.

---

   [6] Although Sherez has not established a formal DOE "policy" regarding male tutors and
female students, he *has* set forth evidence that he was treated differently than similarly situated
female tutors (who are allowed to tutor female and male students).  Sherez's declaration states
that he was removed from assignments tutoring females and that subsequently he has not been
allowed to tutor female students because he is male.  Sherez Decl. at  ¶¶ 23, 24.

ii.    Defendants' non-discriminatory reason

The DOE asserts that tutoring jobs are not based on gender, but are assigned on a rotating basis, based on the availability of the tutor, the good of the student, and allows as many teachers as possible to serve as a tutor in order to maintain the number of teachers in the pool. Reidy Decl. at ¶ 4. Defendants have also presented evidence that other male teachers were assigned to tutor female students in every school year since August 2002. Reidy Decl. in Support of Reply at ¶¶ 4-5.

iii.    Pretext

The burden shifts to Plaintiff to establish pretext by showing that discrimination more likely motivated the employer or that the employer's explanation is unworthy of credence. *See Vasquez*, 349 F.3d at 641. Sherez claims that despite the DOE's non-discriminatory explanation of tutoring assignments, the initial assignment of tutors was routinely made at the school level and not by the District Offices. Sherez alleges that Gronna "remove[d] his name" from a form assigning him to tutor a pregnant female student and that when he confronted her about it, she said "males cannot teach females." Sherez Decl. at ¶ 23. Further, Sherez states that he "has not been assigned to a female student . . . in over 2 years." Sherez Decl. at ¶ 27.

Gronna disputes that she selected a tutor for the pregnant female student, but does not set forth evidence disputing her alleged statement to Sherez that "males cannot teach females." Defendants have also failed to set forth evidence regarding Mattison's alleged statements to Sherez that the rule regarding tutoring assignments "was the result of a recent law suit between a male tutor/HDOE and a female student . . . and that Plaintiff could not get a copy of these 'unwritten rules.'" Sherez Decl. at ¶ 19. Although Sherez has submitted no evidence to support his assertions (other than his self-serving declarations), Defendants have not directly refuted the claims and the court construes the facts in the light most favorable to the non-moving party.

On balance, Sherez has made a showing of pretext. His allegations regarding Gronna's and Mattison's unrefuted statements call into question the DOE's non-discriminatory explanation by showing that other considerations not disclosed by the DOE (including gender) may have been involved in assigning tutoring jobs. The State Defendants' motion is DENIED with respect to Sherez's gender discrimination claims in Count 8.

### 2.    *Count 8: Title VII (Retaliation)*

The Second Amended Complaint alleges the DOE retaliated "against Plaintiff by firing him from his job as GED teacher for McKinley Adult school and

denying him any further work . . . [including as] a full-time classroom Special

Education Teacher for the DOE . . . in the 2003 to 2005 school years." Second

Amended Complaint at ¶ 42.[7]

     *a.*     *Legal framework*

Title VII retaliation claims are analyzed under the same *McDonnell*

*Douglas* burden-shifting framework. *See McGinest v. GTE Serv. Corp.*, 360 F.3d

1103, 1124 (9th Cir. 2004). Under the first step of this framework, a plaintiff must

make a prima facie showing of retaliation.

> A plaintiff may meet his [or her] burden of proof for a claim of
> retaliation under Title VII by showing, by a preponderance of
> the evidence, (1) involvement in a protected activity opposing
> an unlawful employment practice, (2) an adverse employment
> action, and (3) a causal link between the protected activity and
> the adverse action.

*Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). Once Sherez establishes a

prima facie retaliation case, the burden shifts to the DOE to articulate a legitimate,

nondiscriminatory reason for the adverse action, and Sherez then bears the

---

[7] Although the State Defendants moved for summary judgment on all counts, their supporting memorandum does not address any of the other allegedly retaliatory actions (*e.g.*, that Sherez was later denied assignments to tutor females, other part-time and full-time teaching positions, and that Mattison prevented him from obtaining unemployment benefits, *see* Second Amended Complaint at ¶¶ 13, 14, 15, 16, 20; Sherez Decl. at ¶¶ 28, 30, 34, 35, 36). It appears the DOE has not moved for summary judgment on these other retaliation claims.

ultimate burden of demonstrating that this reason is pretextual.  *McGinest*, 360 F.3d at 1124.

       *b.*    *Retaliation claims*

          i.    Prima facie case

Sherez has made the necessary prima facie showing.  He alleges that he filed a complaint with the HCRC alleging gender discrimination in 2003; that he has since been denied tutoring assignments, was fired from the McKinley School for Adults, and that Mattison "improperly sought to prevent Plaintiff from obtaining unemployment benefits, wrongfully in retaliation for having filed an HCRC complaint"; and that all of these adverse employment actions were the result of his protected activity.  Second Amended Complaint at ¶¶ 12, 13, 14, 15, 16, 20.

With respect to Sherez's claim that he was "fired" from the McKinley School for Adults, the DOE asserts that Sherez has not established a prima facie case because he was never terminated.  Instead, the DOE says that he was hired only to teach two semester-long GED classes (one in the fall and one in the spring), which he completed teaching in spring 2003.  Sanpei Decl. at ¶¶ 5-7. Sherez maintains that he was "fired," and that he was "prematurely terminated." Sherez Decl. at ¶ 29.  Whether Sherez was actually "fired" from the McKinley

School for Adults is disputed, yet the record clearly shows that he was not retained to teach the GED class; instead, another "more qualified" teacher was hired. Sanpei Decl. at ¶ 6. Viewing the evidence in the light most favorable to Plaintiff, premature termination is an adverse employment action. Sherez has made the required showing for the adverse employment action prong of the prima facie retaliation case.[8]

        ii.    Non-discriminatory reason

The DOE sets forth a legitimate non-discriminatory reason for its action. According to Defendants, the GED class enrollment was smaller the following semester and would support only one class; Sanpei, the principal, explained that she "selected the other teacher who was more qualified to teach the course." Sanpei Decl. at ¶ 6.

        iii.    Pretext

The DOE's proffered non-discriminatory reason is not consistent with Sherez's claim that he was prematurely terminated. The DOE's explanation regarding class enrollment for the following semester does not explain why Sherez was prematurely terminated or his class was ended during the spring 2003 semester. Accepting as true that Sherez was prematurely terminated in the spring

---

[8] The DOE does not challenge the causation prong of Sherez's prima facie case; the court therefore assumes that Sherez has met his burden as to causation for purposes of this motion.

2003 semester, DOE's explanation that Sherez was not retained for the following semester based on class enrollment and teacher qualifications lacks credibility. In other words, termination during a spring semester appears unrelated to issues of class size and instructor qualifications for the following semester. In short, Sherez's claim that both he and his GED class were terminated early provides sufficient circumstantial evidence tending to show that the DOE's proffered reasons for its actions is unworthy of credence. As a result, the court DENIES the State Defendants' motion as to Count 8.[9]

### 3.    Counts 1 and 2:  Title IX

In Counts 1 and 2, Sherez alleges violations of Title IX, which prohibits discrimination on account of sex in any education program or activity that receives federal financial assistance. *See* 20 U.S.C. §§ 1681-1688. Title VII principles guide the resolution of Title IX sexual harassment and discrimination claims. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000);

---

[9] In paragraph six of the Second Amended Complaint, Sherez alleges that he suffered "other retaliations including a 'Hostile Work Environment' after he complained" that male teachers could no longer tutor female students. Sherez does not raise a hostile work environment claim in his Title VII cause of action (Count 8); the Second Amended Complaint does not allege facts that support a hostile work environment claim; and the State Defendants' have not addressed a Title VII hostile work environment claim in their motion for summary judgment. To the extent Sherez seeks to allege a stand-alone hostile work environment claim under Title VII, the claim fails to "show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). Sherez, therefore, has not stated a stand-alone claim for a hostile work environment.

*Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996) ("[T]he method

of evaluating Title IX gender discrimination claims is the same as those in a Title

VII case."); *Preston v. Commonwealth of Virginia ex rel New River Comm.*

*College*, 31 F.3d 203, 207-08 (4th Cir. 1994) (holding that a Title IX

discrimination claim can be evaluated in accordance with principles governing

Title VII claims); *see also Gallant v. Bd. of Trs. of Cal. State Univ.*, 997 F. Supp.

1231, 1233 (N.D. Cal. 1998); *Patricia H. v. Berkeley Unified Sch. Dist.*, 830 F.

Supp. 1288, 1290 (N.D. Cal. 1993) ("[A]ppellate courts have turned to the

substantial body of case law developed under Title VII for assistance in

interpreting Title IX.  Because Title VII prohibits the identical conduct prohibited

by Title IX; i.e., sex discrimination, we regard it as the most appropriate analogue

when defining Title IX's substantive standards.") (Citation and quotation signals

omitted.)

Based on the Title VII discussion *supra*, the court DENIES the State

Defendants' motion with respect to Sherez's Title IX claims in Counts 1 and 2.

**B.     Individual Capacity Defendants' Motion for Summary Judgment**

Defendants Maeda and Gronna seek summary judgment on Counts 4

(§ 1985), 5 (§ 1986), and 6 (§ 1983).  They also ask the court to decline to exercise

supplemental jurisdiction over Sherez's remaining state law claims in Count 7

(HRS Chapters 368 & 378).  Sherez's Memorandum in Opposition does not

directly address any of the Individual Capacity Defendants' arguments for

summary judgment, nor does it address the applicable law or facts related to

Counts 4, 5, and 6.[10]  The court first addresses Plaintiff's § 1983 claim.

### 1.    Count 6:  § 1983

Sherez alleges that the "D.O.E. employed Defendants have

consciously and illegally violated Plaintiff's Constitutional rights, under color of

state law."  Second Amended Complaint at ¶ 39.  Sherez appears to allege an equal

protection violation.[11]  "The Equal Protection Clause of the Fourteenth

Amendment confers a federal constitutional right to be free from gender

discrimination at the hands of government actors."  *Lindsey v. Shalmy*, 29 F.3d

1382, 1385 (9th Cir. 1994) (citation and quotation signals omitted).  State

employees have a clearly established constitutional right not to be refused

---

[10] It appears that Plaintiff has only responded to the State Defendants' motion for summary judgment on Counts 1, 2, and 9.  Sherez's Memorandum in Opposition mentions the Maeda and Gronna motion in the document heading, but nowhere in the body of the document.

[11] In the Ninth Circuit, "the status of the § 1983 equal protection claim generally depends on the outcome of the Title VII analysis."  *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 472 n.14 (9th Cir. 1991).  *See also Bator*, 39 F.3d at 1028 n.7 ("[C]ase law on equal protection tracks case law on Title VII . . . .  Certainly Title VII and equal protection claims of sexual harassment differ.  For example, a plaintiff must show intentional discrimination and state action for equal protection claims (but not for Title VII claims), and Title VII requires exhaustion of administrative remedies. These differences, however, do not detract from the relevance of Title VII cases to equal protection claims.").

employment because of their sex. *Bator v. State of Hawaii*, 39 F.3d 1021, 1028 (9th Cir. 1994). On summary judgment, the pertinent inquiry is whether Sherez set forth sufficient facts showing a genuine issue for trial that he suffered purposeful, invidious discrimination in violation of the Equal Protection Clause. *Id.* at 1029 (citation and quotation signals omitted).

Sherez has met this standard. As discussed previously, he presented evidence that was denied tutoring work because of his gender. Sherez has presented evidence of discriminatory intent, including Gronna's statement that "males cannot teach females" and presented a triable issue regarding the DOE's "unwritten rules" regarding tutoring assignments. In sum, Sherez has provided evidence of purposeful discrimination sufficient to withstand summary judgment. The court DENIES the motion as to Count 6.

### 2.     *Counts 4 and 5:  §§ 1985 & 1986*

Sherez alleges in Count 4 that Defendants violated "the anti invidious conspiracy Statute act 42 U.S.C. 1985 which the Defendants have conspired to violate." Second Amended Complaint at ¶ 36. In Count 5, Sherez asserts a claim under § 1986 for the Defendants' alleged failure to prevent a § 1985 conspiracy. Sherez did not address these counts in his opposition and, at the hearing, conceded

Defendants' motion with as to Counts 4 (§ 1985) and 5 (§ 1986).  Defendants'

motion is GRANTED with respect to Counts 4 and 5.

### 3.    *Count 7:  HRS Chapters 368 & 378 (Supplemental Jurisdiction)*

Because the court denies Defendants' motion with respect to Count 6

(§ 1983 claim), the court will retain supplemental jurisdiction over Plaintiff's

related state law claims in Count 7.

## V.  <u>CONCLUSION</u>

Based on the foregoing, the court DENIES the State Defendants'

motion.   The Individual Capacity Defendants' motion is DENIED IN PART as to

Count 6 (§ 1983) and GRANTED IN PART as to Counts 2 (Title IX Deliberate

Indifference); 4 (§ 1985); and 5 (§ 1986).  The following claims remain:  Counts 1

(Title IX); 2 (Title IX Deliberate Indifference); and 8 (Title VII) against the State

Defendants and Counts 6 (§ 1983) and 7 (HRS Chapters 368 & 378) against the

Individual Capacity Defendants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 15, 2007.



_/s/ J. Michael Seabright_
J. Michael Seabright
United States District Judge

*Sherez v. Dep't of Education, et al.*, Civ. No. 04-00390 JMS/KSC, Order Granting in Part and
Denying in Part Defendants' Motions for Summary Judgment