```
LAW OFFICES OF ANDRÉ S. WOOTEN
Attorney and Counselor at Law

ANDRÉ S. WOOTEN          3887
Century Square,    Suite 1909
1188 Bishop Street
Honolulu, Hawai`i        96813
Telephone No.: (808) 545-4165

Attorney for Plaintiff
ROBERT SHEREZ
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF Hawai`i

| | |
|---|---|
| ROBERT SHEREZ, | ) CIVIL NO.    04-00390 JMS-KSC |
| | ) |
| Plaintiff, | ) PLAINTIFF'S MEMORANDUM IN |
| | ) OPPOSITION TO THE DEFENDANT |
| vs. | ) STATE, MEREDITH MAEDA AND SARA |
| | ) GRONNA'S MOTION In LIMINE NO. 3, |
| STATE OF HAWAII DEPARTMENT OF | ) TO LIMIT THE DEFENDANT'S |
| EDUCATION; PATRICIA HAMAMOTO, | ) LIABILITY FOR INDIVIDUAL ACTS OF |
| Superintendent of Hawaii | ) DISCRIMINATION IN H.R.S. 378 AND |
| Schools, MEREDITH  MAEDA, | ) 42 U.S.C. 1981, 1983, 1985 AND |
| Principal, Castle High School; | ) 1986 AND STATE LIABILITY UNDER |
| SARA GRONNER OR GRONNA, Vice | ) TITLE VII, TITLE IX AND H.R.S. |
| Principal of Castle High | ) 373 AT TRIAL |
| School. | ) |
| Defendants. | ) Date of Hearing:   March 22, |
| | ) 2007 |
| | ) Time: 9:00 AM |
| | ) Judge: Hon.  J. Michael |
| | ) Seabright |
| | ) |
| | ) |
| | ) |
| | ) Trial Date: March 28, 2007 |
| _____ | ) CERTIFICATE OF SERVICE |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT STATE MEREDITH MAEDA AND SARA GRONNA'S MOTION In LIMINE NO-NO. 3, TO LIMIT THE DEFENDANT'S LIABILITY FOR INDIVIDUAL ACTS OF DISCRIMINATION IN H.R.S. 378 AND 42 U.S.C. 1981, 1983, 1985 AND 1986 AND STATE LIABILITY UNDER TITLE VII, TITLE IX AND H.R.S. 373 AT TRIAL**

Comes Now the Plaintiff, ROBERT SHEREZ, by and through his attorney, Andre' Wooten, hereby files this Memorandum in opposition to the Defendant's Motion In Limine No. 3, which seems to requests a dismissal of individual Defendants Maeda and Gronna prior to trial, despite conceding the Court's prior ruling on the Defendant's Motions to Dismiss and for Summary Judgment.

Plaintiff stated in his complaint at paragraph 4 that Defendant Maeda was informed of the discriminatory actions of his new Vice Principal Sarah Gronna, who had denied him work.  " In addition, this illegal gender discrimination issue was directly brought before him, unsuccessfully, by Robert Sherez in his capacity as Castle High School Principal    He is being sued in his individual, as well as official capacity, for actions or omissions personally performed by him."  Indeed, Mr. Maeda was in a position to give orders to assign work to Mr. Sherez, after Mr. Sherez informed him that he had been told by the counselors and Sarah Gronna herself that male tutors could no longer tutor female students.

In Paragraph 6 of the 2nd Amended Complaint Plaintiff states: "SARA GRONNA  as a Vice Principal at Castle High School was put in charge, by Principal Maeda, of the hiring, firing, supervision of Special Services/Special Education Home & Hospital Tutors(teachers), and responsible for the selection of the home tutors of Special Services/Special Education Home & Hospital Tutors(teachers) of the high school.  V-P GRONNA enforced a

policy barring (Robert Sherez), a male teacher, from tutoring female students in need of Special Services/Special Education Home & Hospital Tutoring. She is being sued in her individual, as well as official capacity, for actions or omissions personally performed by her."

Mr. Sherez always believed that this gender discriminatory policy was illegal. Whether that illegal policy was originated and enforced by V.P. Gronna, or merely enforced by her and created by someone else in the Defendant D.O.E., it was still illegal and the was what Plaintiff complained about. Not just that it might be an illegal official policy, but that it might be some individual's own illegal policy which negatively affected him as well was clearly complained of at the beginning of the complaint and through the subsequent 44 paragraphs.

There is authority that exhaustion of administrative remedies is not required as a prerequisite to bringing a civil rights action under 42 U.S.C. section 1983, including actions in California courts. (Patsy v. Florida Board of Regents (1982) 457 U.S. 496 [73 L.Ed.2d 172, 187, 102 S.Ct. 2557]; White v. State of California (1987) 195 Cal.App.3d 452, 466 [240 Cal.Rptr. 732]. VERGOS v. McNEAL, 146 Cal.App.4th 1387 (2007)

And the Plaintiff is entitled to prove his case under either theory, as they are not mutually exclusive.

The Civil Rights Act of 1991, which now permits compensatory and punitive damages for intentional discrimination. 42 U.S.C.A.

§ 1981a (1992 Supp.).   This significant revision may permit suits against individuals for compensatory and punitive damages where the discrimination was intentional.  GREENLAW v. GARRETT, 59 F.3d 994 (9th Cir. 1995).   The tenth Circuit Court of appeals upheld individual liability under Title VII in Ball v. Renner (10th Cir. 1995) 54 F.3d 664.)

The Hawaii Supreme court also upheld individual state liability for employment discrimination in SCHEFKE v. RELIABLE COLLECTION AGENCY, LTD., 96 Haw. 408 (2001)

> The issue remaining is Jonathan's and Fred's individual liability with respect to the retaliation claim.
>
>   Leder testified that Jonathan was the person who decided to change the locks, was responsible for distributing the keys, and had the sole discretion in deciding who would receive a Christmas bonus. As mentioned earlier, Plaintiff testified that Fred related he had told Jonathan not to pay Plaintiff a Christmas bonus because of the HCRC complaint. Fred remembered attending a meeting to discuss the complaint, but denied
> making the statement. When Plaintiff's counsel asked him if he remembered any of the specifics of the conversations which took place at the meeting, Fred said, "No."
>> HRS § 378-2(2) and (3) provide in pertinent part that it is "an unlawful discriminatory practice: (2) [f]or any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual . . . has filed a complaint . . . in any
>> proceeding respecting the discriminatory practices prohibited under this part" or "(3)
> Page 442 [f]or any person whether an employer,
>> employee, or not, to aid, abet, incite, compel, or coerce the doing of any [such] practices . . . or to attempt to do so[.]" (Emphases added.) The terms "employer" and "person" are defined in HRS § 378-1 (1993) as follows:

    Definitions. As used herein: . . . .
"Employer" means any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States.
  . . . .     "Person" means one or more individuals, and includes, but is not limited to, partnerships, associations, or corporations, legal representatives, trustees, trustees in bankruptcy, receivers, or the State or any of its political subdivisions.

    Retaliation is an unlawful discriminatory practice under HRS § 378-2(2), if established. Based on events related at trial, a jury could find acts of retaliation. Thus, when conflicting evidence is disregarded, see Furukawa, 85 Hawai`i at 11-12, 936 P.2d at 647-48, Plaintiff's and Leder's testimony could support a finding of HRS § 378-2(3) violations by Jonathan.

    Defendants argue that Fred cannot be held personally liable because (1) he engaged only in a "brief conversation concerning the bonus"; (2) the decision to give a bonus or not was ultimately left to Jonathan; and (3) he did not participate in managing Pacific or Reliable or in any decisions concerning Plaintiff. HRS § 378-2(3), however, provides that "any person whether an employer, employee, or not" can be held liable for "aid[ing], abet[ting], incit[ing], compel[ling], or coerc[ing] the doing of any discriminatory practices forbidden by this part."[fn65] (Emphases added.)
    Thus, under the broad language of HRS § 378-2(3), Fred can be liable even if he was "offering advice, not making any decision." As indicated previously, Fred was an 80% owner of the stock of RECOA, which was an 80% owner of Reliable. Taking as true that Fred told Jonathan Plaintiff should not receive a bonus, Fred could be said to have at least incited the doing of the discriminatory practice forbidden by HRS § 378-2(2), in violation of HRS § 378-2(3).

  <u>it cannot be said that "there is no evidence to support a jury verdict in [Plaintiff's] favor," id. (internal quotation marks, citations, and brackets omitted), on the issue of Jonathan's and Fred's liability on the retaliation claim. Thus, the court erred in granting these directed verdicts.[fn66]</u>  SCHEFKE v. RELIABLE COLLECTION AGENCY, LTD., 96 Haw. 408 (2001).

This request should be denied under Rules 301, 302, 401 and 402 of the Federal Rules of evidence.

In BURLINGTON N. & S.F.R. CO. v. WHITE, 05-259 (U.S. 2006) Decided by the U.S. Supreme Court on June 22, 2006 they held:

> Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub.L. 88-352, § 704, 78 Stat. 257, as amended, 42 U.S.C. § 2000e-2(a). A separate section of the Act — its anti-retaliation provision — forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a).

Black v. City & County of Honolulu, 112 F. Supp.2d 1041, 1056-57 (D.Haw. 2000), a case in this district, held that an individual employee may be held liable for violations of Chapter 378.

Plaintiff's are not so limited in presenting evidence in support of their cases of discrimination as urged by the State. As the Ninth Circuit Court of appeal ruled in Sischo-Nwnejad v. Merced Community College Dist., 934 F 2d 1104, 1109 (9th Cir. 1991)

> the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves. Thus, we agree with the Court of Appeals that the District Court should not have required Aikens to submit direct evidence of discriminatory intent. See Teamsters v. United States, 431 U.S. 324, 358, n. 44 (1977) ("[T]he McDonnell Douglas formula does not require direct proof of discrimination").

In WATSON v. FORT WORTH BANK & TRUST, 487 U.S. 977 (1988) 487 U.S. 977, the Supreme Court ruled:

> JUSTICE STEVENS, agreeing that the **racially adverse impact of an employer's practice of simply committing employment decisions to the unchecked discretion of a white supervisory corps is subject to the test of Griggs v. Duke Power Co.**, 401 U.S. 424, concluded that, since cases [487 U.S. 977, 981]
>
> 1. In the disparate-impact context, a plaintiff who successfully establishes a prima facie case shifts the burden of proof, not production, to the defendant to establish that the employment practice in question is a business necessity. See, e. g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 425; Dothard v. Rawlinson, 433 U.S. 321, 329; and Griggs v. Duke Power Co., 401 U.S. 424, 432.

Therefore, to prevail the Defendants must show their blanket denial of work to Plaintiff for below the hours he obtained the previous decade or more was a "business necessity".

The actions of the Defendants all of the by the denial of work to Plaintiff after his reporting a gender violation in hiring are illegally retaliatory, rather initiated and carried on by one employee alone or several in concert.

Whether there is an "official Policy" or practice proven by the facts, as here.   That is relevant to the liability of the State employer for punitive damages.

However, the actions of the individuals are relevant to their liability individually under 42 U.S.C. 1983, 1985, and 1986, as well as H.R.S. 378, and punitive damages officially and individually.   And therefore the Plaintiff has the right to present all of the evidence in support of both pre-texts

articulated by the Defendants that Plaintiff has heard in this case to the jury.   Since 42 U.S.C. 1981A permits punitive damages, they must be assessed either against the State or it's employees in their official and or individual capacities.

> The anti-retaliation provision covers only those employer actions that would have been materially adverse to a reasonable employee or applicant. This Court agrees with the Seventh and District of Columbia Circuits that the proper formulation requires a retaliation plaintiff to show that the challenged action "well might have `dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rochon v.
>    Gonzales, 438 F. 3d 1211, 1219.
>      The Court refers to material adversity to separate significant from trivial harms. The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms by prohibiting employer actions that are likely to deter discrimination victims from complaining to the EEOC, the courts, and employers. Robinson, supra, at 346. The Court refers to a reasonable employee's reactions because the provision's standard for judging harm must be objective, and thus judicially administrable. The standard is phrased in general terms because the significance of any given act of retaliation may depend upon the particular circumstances.
>      Applying the standard to the facts of this case, there was a sufficient evidentiary basis to support the jury's verdict on White's retaliation claim. Contrary to Burlington's claim, a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others.  That  is presumably why the EEOC has consistently recognized retaliatory work assignments as forbidden retaliation.
>
> As Supreme Court Justice Stephens stated:
>
> > The Courts of Appeals have come to different conclusions about the scope of the Act's anti-retaliation provision, particularly the reach of

its phrase "discriminate against." Does that provision confine actionable retaliation to activity that affects the terms and conditions of employment? And how harmful must the adverse actions be to fall within its scope?

    We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.   BURLINGTON N. & S.F.R. CO. v. WHITE, 126 S.Ct. 2405, 05-259 (U.S. 2006)

Hence, Plaintiff has the right to present all of the relevant facts under 402 and let the jury decide whether the State has maintained an illegal gender discriminatory policy with regard to employing plaintiff, or whether the individual defendants discriminated against and retaliated against Plaintiff on their own.   For if the individual defendants participated in maintaining and enforcing a discriminatory and or retaliatory hiring policy and program with regard to the Plaintiff, this is just as discriminatory and harmful as deciding to discriminate and retaliate against the Plaintiff for reporting a gender biased hiring policy of their own inception and execution.

This   12th Day of March 2007.

                                       /S/   Andre' S. Wooten
                                          ANDRE' S. WOOTEN
                                         Attorney For Plaintiff
                                               ROBERT SHEREZ