# Exhibit "A"

162337_1.DOC

**E**

**Hawai'i Civil Rights Commission**
**Pre-Complaint Questionnaire - Employment**
830 Punchbowl St., Rm. 411 Honolulu, HI 96813 TEL: 586-8636 FAX: 586-8655 TDD: 586-8692

Directions: Please fill out this questionnaire completely. The information will be used to determine if we have jurisdiction to investigate your discrimination complaint, and to draft the charge of discrimination. You may be contacted for either a telephone or in-office interview. Please print clearly. Submit documents that support your allegation of discrimination.

1. Information about you:     Date: June 10, 2003

   Name: Sherez        Robert      W.
         Last          First       Middle Initial(s)

   Address: ▓▓▓▓▓▓▓▓▓▓     Hon.            96814
            Number/Street    City           Zip Code

   Telephone: Home: (808) ▓▓▓▓
              Work: (808)

   *Race/Ethnicity:          Sex: Male

   Social Security Number: ▓▓▓▓▓   *Age & Date of Birth: 49 yrs. ▓▓▓▓

2. Name/Telephone/Address of a person to contact if we can't reach you:

   Company/City & County/State etc. that discriminated against you:
   Name: Department of Education, State of Hawaii
   Address:
           Number/Street        City          Zip Code

   Island: ☒ O'ahu  ☐ Kaua'i  ☐ Maui  ☐ Hawai'i  ☐ Moloka'i  ☐ Lana'i

   Telephone: (808)       Home: (808)

   Date Hired: 1988                Estimated Number of Employees:

                                   Pay/Salary: $19.97 per hour

   Job title when discriminated against: Home & Hospital Tutor, GED Instructor

*Used for statistical purposes only
Revised March 1, 1999
Previous Editions Obsolete

EXHIBIT 1

3. **I was discriminated against because of my:**
(Check the protected basis)

- [ ] Race
- [ ] Color
- [ ] Ancestry
- [ ] National Origin
- [ ] Age
- [ ] Religion
- [ ] Arrest & Court Record
- [x] Sex (~~male~~ female pregnant)
- [ ] Sexual Orientation (homosexual bisexual heterosexual)
- [ ] Marital Status (married single)
- [ ] Retaliation (opposed discrimination)
- [ ] National Guard Obligation
- [ ] Child Support Garnishment
- [ ] Disability (physical mental)

What is the disability: _____

4. **I was discriminated against by being:**
(Check the adverse action)

- [x] Fired/Discharged
- [x] Not Hired
- [ ] Forced to Quit
- [ ] Laid Off
- [ ] Sexually Harassed
- [ ] Harassed
- [ ] Refused Accommodation
- [ ] Denied Promotion
- [ ] Denied Transfer
- [ ] Refused Pay Raise
- [ ] Unequal Pay
- [ ] Unequal Hours
- [ ] Suspended
- [x] Other (specify): reduced in hours

5. Date of the last discriminatory action: **on going**
(Must be within the past 180 days)

6. Name(s) and job title of the person who discriminated against you:
1) VP Sarah Gronah  2) Educational Specialist M. Matison  3) Principal Sampai

7. What reason was given to you for the adverse action:
1) No males shall tutor/teach females  2) Enrollment does not support class

8. What remedy are you seeking through us:
Damages for lost wages and discrimination.

9. How did you learn about the Civil Rights Commission:
Many sources, official D.O.E. Literature

**Directions:** Please provide a summary of the discriminatory adverse actions with the names those who discriminated against you. Start with the earliest date and end with the last date. U[se] separate sheets of paper as necessary. On the next page, include the name/telephone/addres[s] of witnesses who have evidence of the discrimination.

| Dates of Discrimination | Describe the Discriminatory Adverse Actions (Explain why the actions were because of your protected basis) |
|---|---|
| Ongoing | 4/20/2003<br><br>In the Spring of 2002, I was the Highest Level Part-Time Teacher, as determined by the central D.O.E. official certification department - a CLASS III ( though previously I have been temporarily certified a full-time Special Education Teacher ) and as a Windward District Special Services/Special Education Home And Hospital Tutor/Teacher. I was assigned a second Castle HS student. I was assigned a sick Windward District, Castle High School pregnant female student. My supervisor/boss , Secretary Virginia Soares ( in charge of in assigning cases, hiring, all payroll and paperwork of the Special Services/Special Education Home & Hospital Tutors for sick, injured, or violent students) , informed me that the Individual Education Plan team leader , Vice-Principal Sarah Gronah, scheduled an IEP meeting. I was not to attend even though the teacher/tutor are required to attend and I was the student's only teacher/tutor. I was later informed that I was removed from the case by instructions of the team (leader) because I was a male. I said that the removal was not fair or right and violated the law and D.O.E. policy.<br><br>In late October, I was called by Ira Itson, a Class Counselor at Castle High School and asked if I could take a student to tutor since I had done such a good job on a student of his in a similar situation ( Pregnant female who was too sick to attend school ) the previous year. I replied "Yes" and he said he would put my name as the school recommended tutor. A week later he called me and told me that VP Gronah had instructed him to remove my name as " no male may tutor a female".<br><br>Later, I went to Castle HS to ask VP Gronah about this. I first met High Risk Counselor Furmark who confirmed that VP Gronah's instructions were that " no male teaches are to teach females". He then said I shouldn't worry as there would be other students and he was not told ( at that time ) I couldn't tutor other students and that he, the family, the student, and the teachers were delighted at how I was tutoring a male Sp. Ed. student for Castle and the many past students over the years. He said he would keep me at the top of his list to tutor his High Risk (Sp. Ed. and 504 ) students.<br><br>I then met with VP Gronah who told me, to my face, that " it was only pregnant females that males could not teach/tutor" . I showed her a small portion of my references and explained I had been tutoring male, female, pregnant students for over 16 years for all 4 Educational Districts on the Island of Oahu and had recommendations from female students , parents, teachers ( including D.O.E. teachers who pulled their child out of the D.O.E. public school and had them assigned to Home and Hospital tutoring so I could work with their child), department chairpersons ( including Special Education, where I was hired full time [ twice ]) . Principals, District Superintendents, etc. I explained that in the past I was specifically recommended to teach the pregnant females ( for McKinley HS by Principal, later Assistant Superintendent Stan Sode, and other schools ) who were either too sick to attend Booth HS or had past problems with the law. I directly asked her if I had ever done anything wrong in this regard and she said "NO". VP Gronah then informed me that she was informed of that rule stating that " males could not tutor pregnant females" by Secretary Soares and she denied that she ( VP Gronah ) said I could not teach any females. I again tried to explain the non-discrimination policy and showed her the official D.O.E. booklets.<br><br>Later, I talked to Secretary Soares who told me that she could not remember ever saying that "rule" to VP Gronah and maybe it was misinterpreted by the VP, but this was a school issue as she (Secretary Soares) only did assignments that did not already have a name filled in by the school and starting this year it was more of the school's job to make assignments, etc. I should contact the school.<br><br>Therefore later, I made an appointment with the Principal of Castle HS, M. Maeda, who |

had been principal of Kailua H.S. when I tutored/taught females for him. I showed him some of my recommendations and reminded him of my past services to him at Kailua H.S. He said he would get back to me after checking with VP Gronah who was now in the hospital. I also asked him to confirm the stated D.O.E. Policy of non-discrimination due to sex, religion, race, etc. and that no blanket rule was allowed to be made: either that males could not tutor females whether pregnant or not and that each case had to be decided on its individual merits. He later called me back from I or right after a Principals Meeting I and confirmed this but it was too late for this case anyway as another tutor had been assigned, but he would find out the details of the case from VP Gronah, who was in charge of this area and that VP Gronah would get back to me.

Later, I made an appointment with Secretary Soares' supervisor/boss, and therefor my indirect supervisor boss ( Educational Specialist M Matson ). I told him of the discrimination and asked what I should do. He first said it was up to the school; made sure that the discrimination never happened to my knowledge at the Windward District Office under him; said it was perfectly legal and besides the rule was to protect me so I wouldn't be sued (and therefor neither would the D.O.E.). He then said it was an "unwritten rule". I asked him for a list of these secret "unwritten rules" that effect/affect my job and the students, but he said "they were unwritten...period". I asked him if I had ever been accused of any wrongdoings, and he replied "NO". I then confirmed that he told me that the new rules stated that starting this year even high school students must have an elder relative present at all times while tutoring. He then told me he agreed with the no male teaching female rule and when he was back in the Honolulu District Office doing this, his same job he went by that rule of " no males should teach/tutor females". I then informed him of my work in this regard with McKinley HS, which was in that same district, and never had that rule. He then again referred me back to Castle HS.

Later, VP Gronah called me to deny that she ever even said I couldn't tutor pregnant females or any females and tried to get me to confirm it was Ira Ilson and/or Richard Furmark who had told me what she said.

In late December 2002 I called up Ira Ilson to ask if there were any more students to tutor. He said he only had 2 more pregnant females and by VP Gronah's rule I could not tutor them.

Since that time I have not been assigned any new students to tutor/teach for Castle or the Windward District. This is very unlike past years in which there is always a demand for tutors in the second semester.

After the winter vacation starting the third quarter, I continued teaching my one Castle Special Education student that I had been tutoring for over a year by student, family, counselor and IEP team request. There was an IEP meeting called.. I had been his only teacher the last academic years semester and taught/wrote lesson plans/graded all courses except one. This single exception was a by internet, a computer class. I was his only live teacher who worked with him. Again, I was not to attend. Further it was decided to reduce hours to be taught for each subject below that of a regular education student in possible violation of the Felix-Waihee agreement and in violation of DOE policy. This was done by direct written communication to Secretary Soares by VP Gronah. I was not informed of this either by the school or Windward District Office until over a month later, when I handed in my timesheets, though I had been in constant contact with both Castle and Windward District Office. The first two quarters of the school year before I tried to correct the no male teaching/tutoring females, I was assigned to teach 4 courses in 6 hours each week. Now I had to teach 5 courses in 4 hours to a Sp. Ed. student. After calls and memos from the parents, Counselor Furmark ( and Me ), I called Virginia Soares on March 25, 2003 and was told that there was a backdated memo from VP Gronah to increase my hours to 5. This still is the same as a normal education student, and not a Sp.Ed. student, and in addition I could not even make up those past hours from March 14 to March 25 until Secretary Soares checked with VP Gronah. I still am awaiting a response.

Starting in the fall of 2002 I have been teaching/instructing the (4) daytime course at McKinley Community School for Adults, Honolulu District Office, the M/D teachers/instructors the principal chose me to tutor/teach, in a special class, one on one, the tutoring/teaching of a special student at MCSA.

Later MCSA was asked by a Drug/Alcohol Rehabilitation Center Counselor at Sand Island, a certified drug/alcohol withdrawal treatment camp, whether they had (1) a teacher and I was selected and asked to go to singularly set up a GED program there. The Senior Rehabilitation staff Counselor decided it would be too much stress for those in a drug or alcohol withdrawal treatment program.

In Spring 2003, MCSA had to change my room to the biggest room they had because of my largest and still growing enrollment. In February of 2003 me and my class was it was the biggest and most advanced teaching Algebra, quadratics and higher level Algebra. I was selected to be filmed in part to make a commercial to convince the BOE and Governor Lingle how important, eager and large the demand was for Adult Education and our excellent faculty. In the second to last week of February 2003 after my class petitioned the school for an extension of our class, Registrar, and our semi-official Counselor ( Won told me and all students that the class would be extended to April 1, 2003 and the VP had approved. In fact more students kept registering for the class by the school and the class kept growing. It was a mixed Adult class of So. Ed., those who did not finish high school, adults in recovery from drug/alcohol, a couple under a Judges Court Order to attend and immigrants wishing to take the schools highest course in English from me in the previous semester. I was instructed to give previews of my class to the highest ESL classes. All the days after I and the students were told the extension was granted after February 23, 2003 ( I was greeted by the Principal or Vice-Principal and the Registrar who kept saying how good a job I was doing and to keep it up.

In the last ½ of the last week of February, I was asked by the C-Base teacher, at MCSA to talk to her class and since I had also been an Inspector for the U.S. Immigration and Naturalization Service to come back and talk to her night Naturalization Class. I asked to get approval of the Principal to come back at night to speak to her naturalization class. She said she would the next week. I never heard anything else about it.

On March 1, 2003 I was instructed to have pre-stamped and self addressed envelopes sent to Secretary Soares, Windward District Office to receive my paystubs ( though in all previous years this was never required and was always sent to my U.S. Post Office Box) I asked if they could be sent for free to my morning job at MCSA, Honolulu District, through the free interschool courier mail service. Secretary Soares was surprised and asked me to confirm where I was working, however agreed that it was proper that my paystubs could be sent for free to me at MCSA. I received my March 5, 2003 payroll stub at my teacher's box at MCSA.

On the morning of March 5 before 8:00 A.M. the VP told me that this was the last day of my class. The office staff sent me another student that morning to enroll in the class as they also were informed about the extension until April 1, 2003. My class was one of the largest, if not the largest, and kept growing. Other non-required classes had as little as 3 students. My students vigorously protested to the Principal, VP and Registrar. They were all given different reasons including " I don't care" ( I was told ). During a class break I asked the Principal why I was being terminated after the students and I had been told the class would continue until April 1, 2003. She responded our class's "enrollment had been dropping"... ??????? I told her that I rewrote my lesson plans after the promised extension and we hadn't yet covered Geometry; a necessary part of the test. I went to Registrar Won who said my students fought for the class but it was denied and he would fight for it later that day and I shouldn't worry. I asked him what happened and he whispered to me after looking around that he heard it had to do with a "SEXUAL Harassment problem/lawsuit ( ? )". I immediately went back and told my students about the whispered information that the Registrar told me, got physically ill and left class 20 minutes early on my final day. The unemployment office contacted MCSA. MCSA informed the school I was still employed, awaiting next summer session.

This original statement limited by time and space more details, examples and explanations available.

P.S.  Also Since the time of this statement more retaliation, interference and ongoing discrimination occurred.

## Witnesses Who Have Evidence of the Discriminatory Adverse Actions

| Name | Telephone (Home and Work) | Address |
|---|---|---|
| Ira Ilson | Phone No. 382-3240/233-5600 | |
| Richard Furmark | Phone No. 233-5600 | |
| Virginia Soares | Phone No. 233-5711 | |
| Marty Mattison | Phone No. 233-5711 | |
| Meredith Maedas | Phone No. 233-5600 | |
| Sarah Gronah | Phone No. 233-5600 | |
| Registrar Won – McKinley CSA | Phone No. 594-0540 | |
| VP Amine – Mckinley CSA | Phone No. 594-0540 | |
| Kelly Horsley | Phone No. 235-8827 | |
| | **GED – DAY CLASS** | |
| Dagmar Suzuki | Phone No. 599-5153 | |
| Pamela Chan-Gallager | Phone No. 371-2301 | |
| Keola Anderson | Phone No. 534-7029 | |
| Ralphy Kesol | Phone No. 599-1837 | |
| ChihCha Yim | Phone No. 942-3047 | |
| Susie H. Kang | Phone No. 282-9997 | |
| Haruko Okamura | Phone No. 589-2806 | |
| Jae E. Kang | Phone No. 285-3440/942-8478 | |
| Ronald Aloliho | Phone No. 847-0784 | |
| Youn-Chz Hu | Phone No. 926-3618 | |
| Robert Hart | Phone No. 593-4755 | |
| Tom Bummel | Phone No. 293-4755 | |
| Keola Nahalea | Phone No. 293-2033 | |

**Closing Statement:** I declare under penalty of perjury the forgoing is true and correct.

_____
Signature